UNITED STATES of America,
Plaintiff-Appellee,

v.

Alfred J. TAYLOR, Jr., a/k/a Red, and
Joseph M. Dean, Defendants-Appellants.

No. 76–2715.

United States Court of Appeals,
Fifth Circuit.

June 17, 1977.

Birch McDonough (Court-appointed), New Orleans, La., for Taylor.

Harry A. Burglass, Metairie, La., for Dean.

Gerald J. Gallinghouse, U. S. Atty., Mary Williams Cazalas, Daniel A. Bent, Ronald A. Fonseca, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before MORGAN and RONEY, Circuit Judges, and KING *, District Judge.

JAMES LAWRENCE KING, District Judge:

The appellants were convicted of conspiracy to possess with intent to distribute and distribution of a controlled substance. In this appeal, they assert six grounds for reversal. Finding merit in one, we reverse.

Prior to the selection of the jury, Mrs. Sevely, a prospective juror, requested excuse from jury duty. This request was denied, and she was subsequently selected to serve on the appellants' jury. The night of the second day of trial, she telephoned the trial judge in an emotional state, complaining about the denial of her request to be excused.

The judge held a conference with the attorneys on the afternoon of the third day of trial and informed them of his conversation with juror Sevely. The defense objected to an excuse of this particular juror because the alternate juror was a man who they believed to be adverse to the defendants. Counsel agreed to a private discussion in chambers between the judge and the juror.

The conference with juror Sevely revealed that she was a student at Tulane University and felt that jury duty might jeopardize a semester of school work. The following colloquy then ensued:

THE COURT: Unfortunately, Madam, I can't excuse you now. We have only about two more days to go with this case. What I will do, if you would like, is excuse you after this case is over from any further jury duty. I will do that for you.

JUROR SEVELY: There are a number of other things that bother me.

THE COURT: Here is the problem, Mrs. Sevely: The problem is we have an Alternate Juror there, and if there is any illness, if I were to excuse you and put this Alternate Juror in the box and there was an illness, I have a mistrial after three or five days of trial, an enormous expenditure of money. We'll have to start over again if we have a mistrial.

JUROR SEVELY: May I make a recommendation? It might have some influence in this procedure of selecting a jury. Since a lot of money is involved, and I don't want to take unnecessary time, all of the people involved are informed, and I feel that a member of—as a citizen, who is being selected to participate in a jury, I am uninformed. I have no knowledge about what the case is, what is involved. When you asked us to sift through our conscience, I could not sift through my conscience fully with that bit of information. There are many things I feel about this case now that I think would have made me answer differently, but I did not know, I had no way of being informed at that point.

THE COURT: Mrs. Sevely, there isn't any way to tell you any more than what I told you. That is not our system of jurisprudence. Most people are like yourself, Mrs. Sevely, serving for the first time. That is the concept of American justice. We take people from all facets of society. That is the basic concept.

JUROR SEVELY: May I have more basic information? I apparently appear on a list of people serving on this Jury, and my address and my information that I have submitted to the Court is on that list, isn't it?

THE COURT: That is right, yes.

JUROR SEVELY: Who has access to that list?

THE COURT: Nobody.

JUROR SEVELY: Who sees that information?

THE COURT: The Judges and the Clerks. Also the attorneys—no, the attorneys don't generally see that list at all, but the—your address, your address is shown on the sheet that everybody has got. They have got to know about you, Madam.

JUROR SEVELY: I understand your position and I know a lot of money is in-

---

* District Judge of the Southern District of Florida sitting by designation.

volved. I feel that as a citizen myself that my life is involved. I live in the neighborhood with these blacks. This incident that occurred in this trial occurred within four blocks of my door, and before I moved to my house I lived one block away from where this transaction—where these people—

THE COURT: When I asked you if there was any reason why you couldn't act as a fair and impartial Juror, why couldn't you tell me that?

JUROR SEVELY: Because I had no information on which to answer. I know this now, and I don't like being in this relationship.

THE COURT: All I had at that time was the indictment and the charge, and that's all I can give you. That's all I have.

JUROR SEVELY: I have to go out of my way to avoid seeing these people. They are in that neighborhood. I don't think this a very good situation that I find myself in, and I feel there must be some way that I can relieve myself of this.

The other thing is that I have been a victim of these people. It is in the police reports, and I felt that at the time I—well, I was open-minded, but in the process of witnessing all of this, it has rekindled my fears. I don't like to be subjected to this, and I don't know at this point if I can be very open-minded about it.

THE COURT: It is a little late in the day for that. Sorry. You will have to do like every other Juror does. As I told you, I think we will conclude this case Tuesday, Tuesday night, and thereafter I will excuse you, Judge Boyle will excuse you, and you will have been excused twice. There is no problem at all.

Your name will be stricken from the panel, from the panel of prospective jurors, after this case.

Appellants contend that it was error for the trial judge not to have excused juror Sevely for cause after the above quoted conversation. Additionally, they contend that the trial judge did not disclose to coun-

sel for the defense the substance of the conversation with the juror.

■ The decision to excuse a juror for cause upon a suggestion of partiality is within the sound discretion of the trial judge. To constitute grounds for reversal, an abuse of discretion must be clear. *United ed States v. Robbins*, 500 F.2d 650 (5th Cir. 1974).

■ The trial judge was properly concerned about the possibility of a mistrial and the resulting expense and loss of judicial time a retrial would have caused. However, this concern must be weighed against appellants' right to a trial by an impartial jury.

■ It was apparent to the judge that juror Sevely was extremely reluctant to sit on this jury. Although he had the discretion to determine the credibility of her increasingly serious statements of bias and prejudice, once she told the court that her life was involved, that she lived in the neighborhood with the defendants, that the incidents happened in close proximity to where she once lived, that she had to go out of her way to avoid the defendant, that she had been a victim of the defendants, and that as a result she did not know whether she could be openminded about the trial, the concern of the possible mistrial paled to insignificance. The right to an impartial jury, free of fear, dominated all other considerations.

The record is clear that throughout the trial, defense counsel strongly opposed excusing juror Sevely and replacing her with the alternate. However, this position was maintained without knowledge of the substance of the judge's conversation with the juror. The allegations made in that conversation were extremely relevant to the juror's capability of impartiality and, therefore, should have been disclosed to counsel.

In *Reynolds v. United States*, 98 U.S. 145, 156, 25 L.Ed. 244, 247 (1878), cited in *Robbins*, the Supreme Court said that it

must be made clearly to appear that upon the evidence the court ought to have found the juror had formed such an opin-

ion that he could not in law be deemed impartial. The case must be one in which it is manifest the law left nothing to the "conscience or discretion" of the court. We feel that this is such a case and that the trial judge was left with little choice, after the above allegations were disclosed, but to excuse the juror.

We find no error in appellants' remaining issues on appeal, but find it necessary to comment on two of them since this case will be retried.

Appellant Taylor complains of the use of the alias, "Red", in the indictment. He contends that the use of aliases are commonly associated with criminals and criminal activity.[1] The government replies that the use of the alias was necessary and relevant to the identification of Taylor. In the tape recorded conversations Taylor was referred to as "Red", his co-defendant, Dean, knew him as "Red", and when he was arrested he had the name "Red" tatooed on his leg. We conclude that there was no error in the use of the alias in the indictment. *United States v. Miranda*, 494 F.2d 783, 788 (5th Cir.), *cert. denied*, 419 U.S. 966, 95 S.Ct. 228, 42 L.Ed.2d 181 (1974).

Appellant Dean argues that the government's records concerning time, date and place of the tape recorded conversations are vague. He urges that he is entitled to more precise police record-keeping. We have been cited no legal authority for this novel proposition, and we reject it.

Finding that the trial judge abused his discretion in failing to excuse juror Sevely for cause, we

REVERSE.

---

1. An alias such as "Red" is no more than a nickname. Such notables as "Red" Skelton, "Red" Buttons, and "Red" Aurbach might take offense at the notion that the use of that name connotes that they must be criminals.