**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Clarence Bill McCORD, Defendant-Appellant.**

**No. 82–3043.**

United States Court of Appeals, Fifth Circuit.

Jan. 5, 1983.

Certiorari Denied April 4, 1983. See 103 S.Ct. 1533.

824

Lawrence R. Dodd, Baton Rouge, La. (Court-appointed), for defendant-appellant.

E. Barton Conradi, Asst. U.S. Atty., Baton Rouge, La., for plaintiff-appellee.

Before GARZA, Senior Circuit Judge, REAVLEY and GARWOOD, Circuit Judges.

PER CURIAM:

Defendant-Appellant, Clarence Bill McCord, appeals from his conviction for unlawful flight to avoid confinement in violation of 18 U.S.C. § 1073.[1] On appeal, he raises some ten issues attacking his trial and conviction. We find no merit to appellant's claims, and therefore, we affirm. However, we write briefly to address some of the more substantive claims which McCord raises.[2]

In May 1977, appellant was convicted of the crime of aggravated rape of a nine year-old child. He was given a twenty year sentence for that crime and a consecutive life imprisonment sentence under the habitual offender statute in Louisiana. While his case was on appeal, defendant was under the custody of Sheriff Duncan Bridges of St. Helena Parish in Louisiana.[3] At various times during his confinement, McCord was allowed to work in the Greensburg jail and for Dr. L.E. Stringer outside the prison complex.

On May 29, 1979, McCord, who was working outside the prison grounds, left St. Helena Parish and travelled outside the state of Louisiana. During the next twenty-seven months, McCord travelled throughout the United States until he was eventually arrested in Stillwater, Oklahoma, on August 29, 1981. Nine months earlier a federal warrant had issued for his arrest for violation of 18 U.S.C. § 1073. After apprehension, McCord was taken into federal custody. Pursuant to Federal Rule of Criminal Procedure 40 he was removed to the juris-

1. 18 U.S.C. § 1073 provides:

*Flight to avoid prosecution or giving testimony.* Whoever moves or travels in interstate or foreign commerce with intent either (1) to avoid prosecution, or custody or confinement after conviction, under the laws of the place from which he flees, for a crime, or an attempt to commit a crime, punishable by death or which is a felony under the laws of the place from which the fugitive flees, or which, in the case of New Jersey, is a high misdemeanor under the laws of said State, or (2) to avoid giving testimony in any criminal proceedings in such place in which the commission of an offense punishable by death or which is a felony under the laws of such place, or which in the case of New Jersey, is a high misdemeanor under the laws of said State, is charged, or (3) to avoid service of, or contempt proceedings for alleged disobedience of, lawful process requiring attendance and the giving of testimony or the production of documentary evidence before an agency of a State empowered by the law of such State to conduct investigations of alleged criminal activities, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

Violations of this section may be prosecuted only in the Federal judicial district in which the original crime was alleged to have been committed, or in which the person was held in custody or confinement, or in which an avoidance of service of process or a contempt referred to in clause (3) of the first paragraph of this section is alleged to have been committed, and only upon formal approval in writing by the Attorney General or an Assistant Attorney General of the United States, which function of approving prosecutions may not be delegated.

2. Appellant raises the following issues on appeal:

(1) Whether it was error for the court to admit into evidence testimony that the defendant was seen in Memphis, Tennessee, during February, 1980, by a bail bondsman thereby suggesting that he had jumped bail and violating Rule 404(b).

(2) Whether the trial judge should have recused himself "sua sponte."

(3) Whether the court erred in denying defendant's motion to dismiss the indictment on grounds of selective prosecution.

(4) Whether the federal removal of the defendant in Oklahoma violated his right to a formal extradition.

(5) Whether the court properly denied defendant's motion to suppress oral statements made while in custody.

(6) Whether the evidence was sufficient to support the charges of the indictment.

(7) Whether the court erred in failing to excuse for cause several potential jurors.

(8) Whether it was error to deny defendant's motion for a continuance.

(9) Whether bringing the defendant to the court in prison clothes is inherently lacking in due process.

(10) Is the jury to decide whether there was proper "departmental authorization" for prosecution of the defendant under 18 U.S.C. § 1073?

3. Appellant was tried and convicted in East Baton Rouge Parish on the state charges. He was initially held in custody of law enforcement officials there prior to being transferred to the custody of Sheriff Bridges on February 19, 1979.

diction of the United States District Court for the Middle District of Louisiana where he was convicted of unlawful flight in interstate commerce with intent to avoid confinement.

■ We turn first to appellant's attack on the Government's enforcement of § 1073. McCord makes three separate, but related attacks. First he asserts that the trial court should have dismissed the indictment since McCord was the first person to be prosecuted under § 1073 in that district in over twenty-six years. McCord asserts that he was selectively prosecuted.

In *United States v. Johnson,* 577 F.2d 1304 (5th Cir.1978) this court adopted the Second Circuit test for determining when a decision to prosecute unconstitutionally denies a party equal protection of the laws:

> To support a defense of selective or disc[r]iminatory prosecution, a defendant bears the heavy burden of establishing, at least *prima facie,* (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as 'intentional and purposeful discrimination.'

*Id.* at 1308. The record is simply barren of any showing that McCord's prosecution was based upon impermissible considerations and appellant's mere assertions do not meet the standard set forth in *Johnson.* McCord's success at avoiding confinement as revealed by the record suggests that the Government had ample reason to pursue this action. The district court did not err in denying defendant's motion to dismiss.

■ McCord also argues that his removal from the Western District of Oklahoma in accordance with Rule 40 on a charge of 18 U.S.C. § 1073 violated his due process right to formal extradition pursuant to

state law. Citing *United States v. Love,* 425 F.Supp. 1248 (S.D.N.Y.1977), appellant argues that Rule 40 was designed "to return federal fugitives to federal custody pursuant to federal warrants based on an underlying federal offense with a view toward federal prosecution in the district where the prosecution is pending." *Id.* at 1249. Since McCord's "underlying" offense was a state offense, he asserts that he was entitled to the due process afforded by a formal state extradition hearing.

We disagree. The purpose of the Rule 40 removal proceeding is to afford defendants reasonable protection, to safeguard them against improvident removal to a distant point for trial and to curb a defendant's opportunity for delay and obstruction of prosecution. *United States v. Green,* 499 F.2d 538, 540 (D.C.Cir.1974); *United States v. Parker,* 14 F.R.D. 146, 147 (D.D.C.1953). *See also* Notes of Advisory Committee on Rules, n. 2 to Fed.R.Crim.P. 40 ("The purpose of removal proceedings is to accord safeguards to a defendant. . . ."). The rule is designed to protect the accused, not deny him his rights. *See United States v. Schwartz,* 372 F.2d 678, 681 (4th Cir.1967). The present case is quite distinguishable from *Love.* In this case, the Federal Government sought and intended to prosecute the defendant for violation of § 1073. This was not a case where the Government merely sought to aid the state in obtaining custody of one of its prisoners. Accordingly, Federal Rule 40 was in fact the appropriate procedure for returning McCord to the Middle District of Louisiana to face federal charges. Indeed, no one has suggested another procedure which would be available to the Government. In reality, McCord's "underlying offense" was violation of § 1073. In *Love,* § 1073 was merely a tool used to detain the accused so that he could be returned to North Carolina to face state murder charges. We do not believe Rule 40 was inappropriate in this case.

■ Finally, with regard to his attack on the Government's enforcement of § 1073, McCord contends that the district court erred in not permitting the jury to consider

whether there was "formal approval in writing" for prosecution of the defendant. Section 1073 is a rare statute which by its express language precludes instigation of prosecution without "formal approval in writing by the Attorney General or an Assistant Attorney General of the United States." In this case, the Government introduced as evidence of "formal approval" a telex from an Assistant Attorney General formally authorizing the Government to prosecute McCord under § 1073. Appellant asserts that "formal approval" is an element of the offense of § 1073 and the court erred in precluding the jury from considering it. He also contends that the telex is not sufficient approval to meet the statute's requirements. We have had no occasion to address these arguments, but we find neither contention persuasive.

Initially, an accurate reading of the statute itself reveals that formal approval is not an element of the offense. The gravamen of the offense is that the defendant fled a state with intent to avoid confinement. *Barrow v. Owen*, 89 F.2d 476 (5th Cir.1937) (interpreting former, but virtually identical, section). The requirement of formal approval comes at the end of the second paragraph of the statute and is designed to insure that a defendant who is going to be "removed" for prosecution under § 1073 will in fact be prosecuted.

█ We also find that a telex issued by an authorized official constitutes "formal approval in writing" as required by the statute. Appellant cites no authority nor have we found any in the statute or case law to suggest that anything more specific is required.

McCord also asserts that the trial court improperly received evidence, over objection, of what appeared to be a past criminal act in violation of Rule 404(b). In this case, the Government called as a witness a bail bondsman who lived in Memphis, Tennessee. He testified that he issued a bond on the defendant in Shelby County, Tennessee, in February, 1980. He further testified that the defendant never reappeared "at the designated time according to the bond."

McCord asserts that the testimony possibly led the jury to infer that he had jumped bail and that as a result they may have convicted him based on this extrinsic evidence of prior misconduct. He also contends that whatever probative value the evidence had was outweighed by its prejudicial effect.

█ The evidence to which McCord objects was admitted as part of the Government's case-in-chief to establish that McCord had indeed travelled in interstate flight. Interstate movement was an essential element of the offense which the Government was obliged to prove beyond a reasonable doubt. That McCord later admitted his movement throughout the country did not make this evidence "needlessly cumulative" as appellant contends. Furthermore, the court instructed the jury that such evidence was being admitted for the limited purpose to establish that the defendant had travelled in interstate commerce. The court was also careful to avoid any mention of crimes or other acts involved during the period in Memphis about which the bondsman was testifying. Thus, while it is not readily apparent that Rule 404(b) was even triggered by the testimony, we cannot say that the evidence was improperly admitted or that its prejudicial effect outweighed its probative value.

█ Finally, we address appellant's contention that the trial court erred in failing to excuse for cause several potential jurors. In the instant case, counsel for the defendant challenged for cause four jurors associated with law enforcement work: two served on the jury—an employee of the Department of Corrections and a volunteer member of the sheriff's flotilla (a type of natural emergency or disaster force); two did not—a volunteer part-time deputy sheriff at another office and a retired reserve deputy sheriff. McCord asserts that the potential for substantial emotional involvement, adversely affecting impartiality, is evident when prospective jurors work for a law enforcement agency or corrections department, and therefore, the jurors should have been excused for cause. McCord con-

tends that the refusal by the court to excuse these prospective jurors for cause resulted in an impairment of his right to challenge peremptorily, and therefore, requires reversal.

Determinations as to the impartiality of a jury, as well as other general qualifications, are committed to the discretion of the trial judge and will not be grounds for reversal absent an abuse of discretion. *United States v. Horton,* 646 F.2d 181, 188 (5th Cir.), *cert. denied,* 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 388 (1981); *United States v. Salinas,* 654 F.2d 319, 328 (5th Cir.1981). The decision to excuse a juror for cause upon the suggestion of partiality is similarly within the sound discretion of the court. *United States v. Taylor,* 554 F.2d 200, 202 (5th Cir.1977). Furthermore, one's official position as a member of the law enforcement community does not require a court in the exercise of its discretion to excuse a juror for cause where the juror has stated that he or she could remain impartial. *See generally, United States v. Apodaca,* 666 F.2d 89, 94 (5th Cir.1982) (court did not abuse discretion in denying challenge for cause of FBI agent).

In this case, the district judge thoroughly examined each of the challenged jurors collectively and individually. Each juror unequivocally stated that they could remain impartial. There is not the slightest hint of prejudice. Accordingly, this claim must fail.

We have examined the record and applicable law with respect to each of the appellant's remaining claims,[4] and we find them to be without merit. Notwithstanding appellate counsel's creative and diligent efforts in his representation of the defendant on appeal, there is no claim upon which McCord can or should prevail.

AFFIRMED.

---

4. *See* claims 2, 5, 6, 8 and 9 listed in note 2 *supra.*