Charles William **BASS**, Petitioner-Appellant,

v.

W.J. **ESTELLE**, Jr., Director, Texas Department of Corrections, Respondent-Appellee.

No. 82–2341.

United States Court of Appeals, Fifth Circuit.

Feb. 4, 1983.

---

Will Gray, Simonton, Tex., Stanley Schneider, Houston, Tex., Stefan Presser, ACLU, Houston, Tex., for petitioner-appellant.

Leslie A. Benitez, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before GOLDBERG, GEE and HIGGIN-BOTHAM, Circuit Judges.

GEE, Circuit Judge:

In 1979 Appellant Bass murdered a uniformed police officer who, having caught Bass red-handed with loot from a bar robbery that he had just committed, was attempting to apprehend him. His state conviction and death sentence were confirmed on direct appeal. *Bass v. State,* 622 S.W.2d 101 (Tex.Cr.App.1981), *cert. denied* —— U.S. ——, 102 S.Ct. 2046, 72 L.Ed.2d 491 (1982). Bass then exhausted state habeas remedies as to the points presented here, his application for the writ being dismissed without hearing. His petition to the court below suffered the same fate, and he appeals to us asserting several points.

*Witherspoon and Waiver*

Bass asserts that one member of the venire, Mrs. Marian Hall, was improperly excused under the dictates of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) and *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). Such determinations are often difficult ones, and that as to Mrs. Hall falls in this category. Her testimony paints the picture of an educated, intelligent woman of strong character, anxious to perform her civic duty of jury service but harboring deeply-seated scruples against the death penalty. Even so, she stated at one point that she believed she could follow the law and at another that she could assess the penalty "if there's no other way to make sure they are not back on the streets." In the end, however, she stated that she would be unable to take the required oath that the mandatory penalty of death occasioned by giving affirmative answers to a triad of questions required by Texas law that the prospect of the death penalty would not affect her deliberations on any issue of fact. After she had done so, the court sustained a challenge for cause.

Were we required to reach a final conclusion, we might incline to the view that her dismissal was improper. Since, however, we do not wish to add further precedent to the burgeoning common law of *Witherspoon* and since we conclude we are not required to do so, we shall assume, without deciding, that it was. But since we also conclude that Bass's admitted failure to object to her dismissal waived the point, a decision of the *Witherspoon* issue is unnecessary to disposition of his appeal.

 It is settled law that such a state prisoner as Bass, barred by procedural default from raising a constitutional claim on direct appeal, cannot do so in a federal habeas proceeding without demonstrating both cause for the default and actual prejudice resulting from it. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Texas procedure requires a contemporaneous objection to the exclusion of a venireman on pain of waiver of the point. *Boulware v. State,* 542 S.W.2d 677 (Tex.Cr. App.1976), *cert. denied,* 430 U.S. 959, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977). None was made by Bass to the dismissal of Mrs. Hall from the venire. On these facts, the state contends that whether or not Mrs. Hall was properly excused is not before the court, the point having been waived.

 Bass advances several arguments to the contrary. The first of these, serving as a sort of preparatory artillery barrage for his more specific attacks and reiterated at various points throughout his general presentation, consists of variations on the "death is different" theme. Citing several expressions of the Supreme Court and others emphasizing the seriousness with which capital cases are to be regarded and reviewed,[1] Bass suggests that there are what amount to two procedural systems for review of criminal cases: one for those in which capital sentences have been imposed, another for the rest. Implicit throughout his arguments, the suggestion becomes ex-

---

1. Such, for example, as Justice Stevens' often-quoted expression in concurrence: "Because of the unique finality of the death penalty, its imposition must be the result of careful proce- dures and must survive close scrutiny on post-trial review." *Coleman v. Balkcom,* 451 U.S. 949, 101 S.Ct. 2031, 68 L.Ed.2d 334 (1981).

plicit in his treatment of *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), discussed below. Since the suggestion is merely general and implicit, we treat it in the margin.[2]

■ In *Engle v. Isaac, supra,* the Supreme Court considered whether a colorable constitutional claim—that due process requires proof of a negative, the absence of self defense, when that defense negates an element of the crime charged—was preserved for review where the requisite contemporaneous objection was not made. Citing the costs to society and to our federal system of permitting such disregard of state procedures and safeguards, the Court declined to make an exception for *any* constitutional claim whatever to the rule of *Wainwright v. Sykes, supra.*[3] The breadth of the Court's language—"a constitutional claim"—renders unnecessary an analysis by us of petitioner's arguments that *Witherspoon* contentions cannot, per se, be waived. We are bound to follow the law of the Court; if exceptions are to be made to rules stated in such terms by the Court, it is for the Court to make them, not for us.

■ *Sykes* and *Engle,* however, recognize that waiver can be avoided by a showing of "cause" and "prejudice"; and Bass argues that "cause" existed in his case. This is said to be so because at the time of his trial the state court system of Texas failed properly to understand and apply *Witherspoon* and hence any objection would have been meaningless. A very similar suggestion was, however, squarely rejected in *Engle. Witherspoon v. Illinois,* decided in 1968, long antedated petitioner's trial in 1980, so that the basis of the contentions successfully made in *Adams v. Texas,* 448 U.S. 38, 39, 100 S.Ct. 2521, 2523, 65 L.Ed.2d 581 (1980)— the same contentions that counsel alludes to here—was apparent and available. Petitioner's contention to us therefore goes down before the specific language of *Engle:*

> Where the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labelling alleged unawareness of the objection as cause for a procedural default.

456 U.S. at 134, 102 S.Ct. at 1574, 71 L.Ed.2d at 804.

■ We hold that petitioner's *Witherspoon* objection to the discharge of Mrs. Hall was waived.[4] An objection to the dis-

---

**2.** In general response to the implicit suggestion, we note our disagreement with it. The various expressions of the Supreme Court quoted by Bass are not more than precatory ones, expressive of the sanctity with which all decent men view human life as endowed and the gravity with which they regard a decision—however measured it may be—to terminate it. Nor are these expressions novel or the sentiments which they avow newly-arisen; they go back to the Black Cap and beyond, stretching far into times when human life was shorter, more perilous, and less highly regarded than it is today. To be sure, they also refer to the many explicit safeguards that have now been enacted or deduced to express these concerns. But to suggest that a different general mode of review is required by them is to demean the criminal law generally, to imply that we might somehow view lightly such questions as whether a life sentence or one for a lengthy term of years was arrived at properly. There is one system of criminal appellate review, applicable to all cases and to this one.

**3.** The Court's language, written in response to a contention that where the constitutional error asserted might have affected the truthfinding

function an exception to the *Sykes'* waiver should be made, could scarcely be more sweeping:

> We do not believe, however, that the principles of *Sykes* lend themselves to this limitation. The costs outlined above do not depend upon the type of claim raised by the prisoner. While the nature of a constitutional claim may affect the calculation of cause and actual prejudice, it does not alter the need to make that threshold showing. We reaffirm, therefore, that any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief.

*Engle v. Isaac,* 456 U.S. at 107, 102 S.Ct. at 1572, 71 L.Ed.2d at 801.

**4.** Bass also appears to contend that since on occasion the Texas court addresses the merits of claims which it might have viewed as waived, and that when it does so we consider ourselves authorized to do likewise, *e.g., Burns v. Estelle,* 592 F.2d 1297 (5th Cir.1979), *aff'd en banc* 626 F.2d 396 (1980), we must disregard the state's contemporaneous objection rule in

charge of a venireman is little to require; to hold otherwise would open the discharge of every venireman, objected to or not, in such cases as this—where the venire examination consumed over two-thirds of the 3000-page record—to examination on appeal. We cannot countenance such ambushing of state processes.

*The Refusal to Discharge Juror Turner*

About a month after being selected as the fourth juror, and before trial commenced, Juror Marilyn Turner awakened to find a knife-bearing intruder in her bedroom. Shaken by this experience, she approached the court, seeking to be excused from jury service because of doubts about her impartiality, distraction resulting from her fright, and inability to concentrate.[5] At a hearing held by the court she testified to her agitated state, extending even to physical symptoms such as nausea and sleeplessness. She also testified, however, that she was willing to do her civic duty and that she would do her best to follow the court's instructions on the law. Bass refused to consent to her release unless he was granted additional peremptory challenges, his having been exhausted. The trial court declined to do so or to discharge her, and the Texas Court of Criminal Appeals agreed. 622 S.W.2d at 104–107. Before us, Bass claims that these determinations vio-

lated his constitutional rights to due process and an impartial jury.

▓▓ We reject these contentions. The trial court concluded that Ms. Turner was neither disabled nor biased against Bass. Both in the Texas system and in ours, such determinations, even on direct appeal, are reviewed for abuse of discretion only. *Bass v. State,* 622 S.W.2d 101, 106–7 (Tex.Cr. App.1981); *United States v. Horton,* 646 F.2d 181, 188 (5th Cir.1981). Before us, such determinations by state tribunals are, in the absence of exceptions not asserted here, endowed with a presumption of correctness. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). The trial court both heard and saw the manner of Ms. Turner's testimony. We discern no abuse of its discretion.[6]

*Refusal of Continuance for New Counsel*

▓▓ Two days before trial, Bass sought permission of the court to dismiss his court-appointed counsel and for a continuance to permit his representation by new counsel from Alabama, counsel who knew nothing of the case and were just commencing a lengthy trial in Georgia. Bass's case had been set for trial for two months. His stated ground was a sudden loss of personal confidence in his appointed counsel and a desire for new ones specializing in "death cases." After hearing argument, the court

all cases. We have recently rejected this contention. Speaking of our practice of reaching the merits where the state court has done so, rather than resting on procedural default, we explained:

> Otherwise, federal habeas review would unjustly be denied a prisoner who has no way of proving that the state courts did consider the merits of his claim. This presumption does not unduly infringe upon the comity considerations underlying *Sykes* and *Isaac,* for all a state must do to preclude federal examination of an alleged error, contrary to state procedural rules, is to indicate that it has found the claim to be procedurally barred.

The appellant asserts that we have circumvented *Sykes* and *Isaac* by finding that, in a completely unrelated case, Florida excused state procedural default. To the contrary, we do not mean to suggest that past excuse of a default in another case allows a federal court

to excuse a default in a case where the state courts have not. Instead, we have looked to Florida law to determine what the state courts have done in the case before us. This is a necessary, accepted analysis in habeas cases. *See, e.g., County Court v. Allen,* 442 U.S. 140, 149–51, 99 S.Ct. 2213, 2220–22, 60 L.Ed.2d 777 (1979).

*Henry v. Wainwright,* 686 F.2d 311, 314 n. 4 (5th Cir.1982).

5. She testified that the intruder was not Bass and had been apprehended.

6. Ms. Turner's situation is a far cry from that of Juror Sevely in *United States v. Taylor,* 554 F.2d 200 (5th Cir.1977), an opinion on direct appeal cited to us by Bass. There the trial judge failed to disclose to defense counsel her stated fear for her life resulting from living in the same location as defendants, having been a past victim of them, etc.

refused these requests. Bass asserts that by so doing the court denied him effective assistance of counsel. We disagree, finding a complete answer to the contention in the language and authorities cited in *United States v. Silva*, 611 F.2d 78, 79 (5th Cir. 1980):

> On the day before trial defendant made an oral motion for continuance, informing the district court he wished to substitute retained counsel for court-appointed counsel. Denial of defendant's motion did not deny defendant his Sixth Amendment right to counsel, since there is no absolute and unqualified right to counsel of choice, even where counsel is retained. *United States v. Brown*, 591 F.2d 307, 310 (5th Cir.), *cert. denied*, 442 U.S. 913, 99 S.Ct. 2831, 61 L.Ed.2d 280 (1979). The freedom to have counsel of one's own choosing may not be used for purposes of delay. *United States v. Uptain*, 531 F.2d 1281, 1290 (5th Cir.1976). Last minute requests are disfavored. *United States v. Sexton*, 473 F.2d 512 (5th Cir.1973). Denial of a continuance is within the discretion of the trial judge and will not be reversed absent a clear abuse of discretion. *United States v. Harbin*, 601 F.2d 773, 778 (5th Cir.), *cert. denied*, 444 U.S. 954, 100 S.Ct. 433, 62 L.Ed.2d 327 (1979). There was no abuse of discretion here.

Nor was there any here.

*The Motion to Dismiss without Prejudice*

Rightly or wrongly, at present the review of cases in which capital sentences have been imposed customarily incorporates three full-dress proceedings: (1) direct appeal, with resort to the Supreme Court in the event of an affirmance; (2) habeas corpus proceedings through the state system, pursued both with a view to obtaining relief and the requisite exhaustion as well, with like attempted resort to the Supreme Court; and (3) statutory habeas proceedings through our hierarchy of federal courts. Understandably, most convicted defendants sentenced to death covet delay, if nothing better can be had; and the nine to eleven court proceedings permissible according to present arrangements provide it in gener-

ous measure—it is now well over three years since Bass murdered Officer Baker and we are only at the next-to-last stage of the third general proceeding.

Among the claims before us, one discussed below is that trial counsel was ineffective. Substituted appellate counsel now suggest that their predecessor *appellate* counsel was ineffective as well, ineffective in failing properly to present to the state courts (and so exhaust) all possible claims of *trial* counsel's ineffectiveness. So suggesting, Bass moves us to cause the present federal proceedings to be dismissed at their penultimate stage so that he may once more commence the second general stage of the proceedings. In support of his motion, he advances to us new claims for relief not presented to the state courts or our lower federal court, appends ex parte exhibits, advances hearsay declarations that a confession given by Bass (but not introduced at the trial) was coerced, and so on. Thus entire and novel vistas of delay come in prospect, delays to be added to those already noted.

It will not do. Much is due Bass, standing as he does under sentence of death, but something is due as well to justice and the judicial system, one that stands between us and anarchy and self defense. We decline to permit Bass to tie both concerns in knots by such last-minute maneuvers, maneuvers that would, if countenanced, entail commencing again and from the outset the entire panoply of state and federal habeas proceedings, perhaps only to face new contentions at some later stage in them that *present* appellate counsel failed in their obligations to him in some manner. Somewhere, even in a capital case, there must be an end—especially, perhaps, in one such as this, where there can be no doubt of Bass's guilt. Since these contentions were not presented to the trial court, but only to us and for the first time on appeal, in accordance with our long-established precedent we decline to reach them. *Spivey v. Zant*, 661 F.2d 464 (5th Cir.1981) and authorities cited at 477. We deny the motion.

*Ineffective Assistance of Counsel?*

We have declined to reach claims that were not presented to the state courts or to the court below. Certain claims that trial counsel was ineffective were exhausted in state courts and advanced in the court below, however, and therefore require our attention. These are, as presented, trial counsel's claimed ineffectiveness stemming from:

(1) Counsel's failure to investigate the offense in question;

(2) Counsel's failure to challenge, legal proffer, the initial stop, search and subsequent arrest of the defendant;

(3) Counsel's failure to challenge the identification procedure of said defendant, legal proffer, and to show that said proceeding was tainted by an illegal confession herein and;

(4) Counsel's failure to exercise the fundamental right of cross-examination in regards to *Witherspoon* jurors.

In addition to these, Bass presented and exhausted the claim that counsel was ineffective for failing to object to the dismissal of Mrs. Hall, the matter discussed above in the initial division of our opinion.

 No hearing has ever been held in any court on these exhausted claims. Though some are sufficiently vague that it is difficult to view them as factual allegations, one at least—that regarding the failure to object to the discharge of Mrs. Hall from the venire—is clear and factual. Whether that failure may have resulted from a tactical decision or other justifiable circumstance cannot be determined from this record, and the court below made no factual findings in support of its order of dismissal. We remand the cause to the district court for a hearing on these exhausted claims. No others need be considered. In all other respects the decision below is affirmed. It is so

ORDERED.

GOLDBERG, Circuit Judge, specially concurring:

I concur in the result in this case, but write with a regretful pen because I do not embrace the apologia juxtaposed to the remanding words. I cannot and do not endorse the concept suggested by the majority in its footnote two that no difference exists between a case in which a man's life is at issue and a case in which a fifty dollar fine is the maximum sanction. To the contrary, I submit that capital cases demand special consideration, both at trial and on appellate review, because of the exceptional and irrevocable nature of the penalty involved. In pronouncing the ultimate sentence, our enunciation must be positive, definite, unconditional, and without prefix, for once the words are pronounced there is no suffix. Surely, when a life hangs in the balance, extraordinary care and rigorous scrutiny are not too much to ask.

I wholeheartedly agree with Judge Gee's assessment that this cause must be remanded to the district court. Although judges' lights emanate at times from different judicial spectra, in this instance they focus upon the necessity for a plenary hearing on Bass's exhausted claims of ineffective assistance of trial counsel. As the Supreme Court observed in *Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963), unconstitutional detention is so insupportable that "the opportunity to be heard, to argue and present evidence, must never be totally foreclosed." In *Townsend* the Court emphasized the plenary nature of the federal courts' power of inquiry in habeas cases, substantially increasing the availability of evidentiary hearings in such proceedings. Outlining the situations in which hearings would be required, the Court made mandatory much that previously had been discretionary with the district courts. *See Smith v. Yeager,* 393 U.S. 122, 125, 89 S.Ct. 277, 279, 21 L.Ed.2d 246 (1968). The Court decreed:

Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the

state-court trier of fact has after a full hearing reliably found the relevant facts. *Townsend,* 372 U.S. at 312–13, 83 S.Ct. at 756–57 (footnote omitted).

No court, state or federal, has ever held a hearing to ventilate Bass's claims that his legal assistance at trial was ineffective. *Townsend* requires the federal court to address the merits of these factual claims in a full and fair evidentiary hearing. Undeniably, a remand for such a hearing is the appropriate resolution of this matter, and with this resolution I concur.

Perhaps in underscoring the necessity for granting a hearing in Bass's case I belabor the point. I do so, however, because I fear that the ultimate result in this case—a remand for an evidentiary hearing—is overshadowed by other language in the majority opinion. I do not wish to see a habeas applicant's right to an evidentiary hearing denigrated by the apologetic fashion in which the majority grants a remand.

My concern for Bass's right to a hearing is magnified by the overriding fact that this is a death penalty case. As the Supreme Court has recognized and reiterated, "there is a significant constitutional difference between the death penalty and lesser punishments." *Beck v. Alabama,* 447 U.S. 625, 637, 100 S.Ct. 2382, 2389, 65 L.Ed.2d 392 (1980). "[D]eath is a punishment different from all other sanctions in kind rather than degree." *Woodson v. North Carolina,* 428 U.S. 280, 303–04, 96 S.Ct. 2978, 2990–91, 49 L.Ed.2d 944 (1976). *See Furman v. Georgia,* 408 U.S. 238, 286–91, 92 S.Ct. 2726, 2750–53, 33 L.Ed.2d 346 (1972) (Brennan, J., concurring); *id.* at 306, 92 S.Ct. at 2760 (Stewart, J., concurring). Because "death as a punishment is unique in its severity and irrevocability," *Gregg v. Georgia,* 428 U.S. 153, 187, 96 S.Ct. 2909, 2931, 49 L.Ed.2d 859 (1976), the Supreme Court has been especially sensitive to ensure that every possible safeguard is observed in capital cases. *Id.* Death cases truly and deservedly are in a class by themselves, *see Furman,* 408 U.S. at 287–88 & n. 34, 92 S.Ct. at 2751 & n. 34 (Brennan, J., concurring), for death has a uniqueness that no philosopher's stone has ever transmuted, no mill stone has ever crushed.

I view these pronunciamento as more homiletical than precatory. To me, the teachings of the Supreme Court admonish that fastidious trial procedures and meticulous scrutiny on posttrial review are mandated before the death penalty may be imposed. We do not demean the criminal law by suggesting a different treatment for capital cases; rather, we elevate life over death.

The majority opinion implies that the procedures, the penology, and the attitudes of the decisionmaker should be the same, whether the defendant is charged with speeding or subject to a capital offense. But all cases are *not* alike. The law is replete with discrepant standards for the application of many of its maxims and apothegms. For example, the proper scope of appellate review depends upon whether the factfinder was judge or jury; a recidivist may be punished more harshly for a particular crime than a first-time offender. These too are "double standards" in the law, but they shock neither the conscience nor the intelligence.

When the criminal justice system exacts the ultimate penalty, and an individual is executed, no constitutional wrong can ever be rectified. The penalty is irrevocable and inexorable. Therefore we must be certain, and I would underscore *deadly certain,* that no germ of constitutional error has infected the prosecutorial treatment. Two things must be indisputable: that the accused is in fact guilty, and that no facts or factors militate against putting the accused to death. There are no writs of habeas corpus from a casket.

That capital cases create an extraordinary situation for the accused, the decisionmaker, and the appellate judges on review cannot fairly be denied. Such an extraordinary situation demands extraordinary treatment: exacting procedural protections at trial and close scrutiny on appellate review. I am even emboldened to suggest that the standard for effectiveness of trial counsel defending an accused on a capital

charge should be elevated, in order to ensure that the fundamental constitutional rights of an accused are asserted and protected. *See Wainwright v. Sykes,* 433 U.S. 72, 118, 97 S.Ct. 2497, 2522, 53 L.Ed.2d 594 (1977). (Brennan, J., dissenting) (suggesting that limitations on scope of habeas jurisdiction may force reconsideration of standards for adequacy of counsel). Only the most unyielding criteria for representation and review can guarantee that the death penalty is imposed only where appropriate.[1]

In recent years, postconviction relief from unconstitutional detentions has been hedged about by a plethora of statutory and judicial procedural barriers that have obstructed the view of habeas corpus afforded by *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). The majority opinion highlights the most perilous of these obstacles—the contemporaneous objection rule and the "cause and prejudice" standard of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Judge Gee intimates strongly that if he were a free agent he would hold that venireman Hall should not have been excused. Yet, as he conclusively convinces me, Supreme Court treatment of the contemporaneous objection rule forecloses our consideration of this constitutional claim. In response, I can only say that while I agree with Judge Gee's interpretation of the law enunciated by my superiors, I find it profoundly regrettable. Only the sweeping synoptic language of the majority opinion in *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1983), compels me to concur with the majority's analysis. *Engle* is the law, and Judge Gee has read it according to the King's English, but its holding is myopic and not subject to my approbation. It saddens me to admit that there is rarely any escape from the executioner's activities under the lethal blows rained upon the Great Writ, which seems to become less great as the years pass. Were I musician rather than judge, I would compose a dirge; instead, I sorrowfully file this special concurrence. I am not ready to put *Fay v. Noia* in the hangman's noose; I pray that, for all its recent modifications and exceptions, it shall never die.

To justify its refusal to address certain of Bass's claims, the majority invokes the importance of finality in criminal cases. There is a natural collision of consciences in rendering justice when a human life has been taken by the individual who must approach the gallows. I share the majority's respect for finality, for concluding the lengthy process of criminal appeals. Even those incarcerated on death row, those who live beneath the sword of Damocles, must in some ways long for a sense of closure. Yes, there must be an end to criminal litigation. Our duty as judges, a duty we may not shirk, is to ensure that the ending is a *constitutional* one. Some things go beyond time.

---

1. The majority states that in this case "there can be no doubt of Bass's guilt," *ante* at 1159, suggesting somewhat obliquely that the certainty with which an appellate court views the determination of an accused's guilt should affect the resolution of the accused's collateral claims. This rationale conflates the issues of culpability and constitutionality. To resolve that an accused is guilty is one thing; to declare that he has constitutionally been sentenced to die is quite another.