# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20053

United States Court of Appeals
Fifth Circuit

**FILED**

May 19, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

     Plaintiff - Appellee

v.

SAMUEL CASTRO-FLORES, also known as Chame, also known as Chamuco,

     Defendant - Appellant

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CR-614

Before CLEMENT and OWEN, Circuit Judges, and JORDAN, District Judge.[*]

PER CURIAM:[**]

Samuel Castro-Flores appeals his criminal conviction. Two questions are presented on appeal: whether the district court abused its discretion by admitting evidence of Castro-Flores's prior conviction for conspiracy to transport and harbor illegal aliens, and whether the district abused its

---

[*] District Judge of the Southern District of Mississippi, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-20053

discretion by denying Castro-Flores's motion to strike a juror for cause. Finding no error, we AFFIRM.

## I.

Castro-Flores and his co-conspirators were in the business of transporting illegal aliens into the United States and then holding them for ransom until friends or relatives paid for their release. Castro-Flores had a leadership role. He generally avoided direct contact with the hostages, leaving such tasks as guard duty and transportation to his underlings. This caution was born of experience, as Castro-Flores had a 2009 felony conviction for serving as a wheelman in another alien smuggling operation.

Castro-Flores's present smuggling and kidnapping operation ended when friends and relatives of the hostages reported the scheme to law enforcement. Castro-Flores was arrested and charged under an 18-count indictment. He pleaded guilty to one count—illegal reentry—and pleaded not guilty to the remaining counts, composed of both conspiracies to commit and the actual commission of the offenses of hostage-taking, harboring and transporting illegal aliens, and using a firearm in furtherance of a crime of violence.

Before trial, the government notified the defendant and the court of its intention to offer evidence of Castro-Flores's 2009 conviction for conspiracy to transport and harbor illegal aliens. The district court held a hearing to determine the admissibility of this evidence.[1] The government argued that the prior conviction was relevant to prove Castro-Flores's intent, motive, and absence of mistake as to the charged offenses. The defense argued that the probative value of the conviction was substantially outweighed by the danger

---

[1] This hearing occurred immediately after Castro-Flores's guilty plea to the charge of illegal reentry.

No. 15-20053

of unfair prejudice and that the conviction was impermissible propensity evidence. The district court ruled that the evidence was relevant and admissible and would be presented to the jury with an appropriate limiting instruction.[2] The case then proceeded to jury selection for the contested charges.

After jury selection—but before opening statements—Juror 4 contacted the trial judge's case manager and asked whether a police patrol could drive by his home each night. After opening statements—but before the presentation of evidence—the trial judge called Juror 4 into his chambers, along with government and defense counsel, to clarify his concerns. Juror 4 stated that he had seen movies where jurors were approached at home and offered bribes. The trial judge assured Juror 4 that the jurors' home addresses were protected and that there was no history of jury tampering at that courthouse. Juror 4 confirmed that he would presume the defendant to be innocent; that he would hold the government to its burden to prove its case beyond a reasonable doubt; and that he had not pre-judged the defendant's guilt. Juror 4 also stated that he was not concerned about the movie he had seen because the movie was fictional. The defense counsel moved to strike Juror 4 on the ground of "intrinsic influences," arguing that the juror was worried that someone—most likely, the defendant—would try to bribe him. The district court denied the motion, and Juror 4 remained on the jury for the rest of the trial.

The jury convicted on all counts. The district court sentenced Castro-Flores to life in prison plus sentences of 120 and 240 months in prison to run concurrently and 84 months in prison to run consecutively.

---

[2] The district court provided the jury with Fifth Circuit Pattern Jury Instruction (Criminal) 1.30, Similar Acts, after the evidence was admitted and again before deliberations.

No. 15-20053

## II.

"We review the admission of Rule 404(b) evidence for an abuse of discretion with a heightened review in criminal cases." *United States v. Olguin*, 643 F.3d 384, 389 (5th Cir. 2011).

"Determinations as to the impartiality of a jury, as well as other general qualifications, are committed to the discretion of the trial judge and will not be grounds for reversal absent an abuse of discretion." *United States v. McCord*, 695 F.2d 823, 828 (5th Cir. 1983).

## III.

Castro-Flores contends that the district court abused its discretion by admitting evidence of his prior conviction under Federal Rule of Evidence 404(b). First, Castro-Flores argues that the 2009 conviction for smuggling was not relevant because it was insufficiently similar to the charged offenses. Second, Castro-Flores argues that the evidence should have been excluded under Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice.

We use a two-pronged test to determine if an abuse of discretion occurred with respect to the admission of Rule 404(b) testimony. *Olguin*, 643 F.3d at 389. "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403." *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978).

Castro-Flores pleaded not guilty to 17 of 18 counts, including conspiracy to harbor and transport illegal aliens. Where "a defendant enters a plea of not guilty in a conspiracy case, the first prong of the *Beechum* test is satisfied," because "[t]he mere entry of a not guilty plea in a conspiracy case raises the issue of intent sufficiently to justify the admissibility of extrinsic offense

4

evidence." *United States v. Cockrell*, 587 F.3d 674, 679 (5th Cir. 2009) (quoting *United States v. Broussard*, 80 F.3d 1025, 1040 (5th Cir. 1996)). Here, the government sought to introduce evidence of Castro-Flores's prior offense—where he was caught driving an illegal alien to a delivery point—to prove his intent and knowledge of the present offenses, where he was the alleged boss of a conspiracy to transport illegal aliens and hold them for ransom. We have held, in a similar case, that "[e]ngaging in the transportation of illegal aliens requires the defendant to possess the same 'state of mind' as agreeing with others to do the same thing" and that "proof of the defendant's intent to commit the earlier extrinsic offense makes it more likely that he intended to conspire . . . to transport illegal aliens." *United States v. McMahon*, 592 F.2d 871, 873 (5th Cir. 1979). By the same rationale, we find that Castro-Flores's prior conviction makes it more likely that he intended to commit the charged offenses in this case.

Under the second prong of *Beechum*, we must consider whether the probative value of Castro-Flores's earlier conviction is substantially outweighed by the danger of unfair prejudice. "[T]he offense of conspiracy requires an element of intent or knowledge which is often difficult to prove." *McMahon*, 592 F.2d at 875. Here, the government sought to establish Castro-Flores's role in the conspiracy through the testimony of former hostages, who had only indirect dealings with him, and the testimony of co-conspirators, whose credibility was necessarily in question. Throughout the trial, Castro-Flores's defense attorney argued that he was a simple air-conditioning repairman set up to take the fall by the real culprits. In his opening statement, the defense counsel stated that Castro-Flores was "a perfect patsy"; that there was "no direct evidence of what Mr. Castro or any of [the co-conspirators] ever talked about"; and that all of the government witnesses had "gotten something" in exchange for testifying. In his closing argument, the defense counsel made

the same points, arguing that "all the direct evidence in this case comes from co-conspirators" who "think that they will get a better sentence if Castro-Flores is convicted"; and that there was no "credible evidence to believe" that Castro-Flores "specifically intended" to engage in any criminal activity.

Thus, "[w]ithout the evidence of appellant's prior conviction, the government's entire case . . . boiled down to a credibility choice" between Castro-Flores and the other co-conspirators. *See McMahon*, 592 F.2d at 875. As a result, the probative value of the extrinsic offense evidence was very high. *See, e.g., United States v. Hernandez-Guevara*, 162 F.3d 863, 872 (5th Cir. 1998) (finding great probative value in evidence of prior conviction where the defendant "based his defense on a claim that he was merely in the wrong place at the wrong time and had been framed by [a co-conspirator]" and where "[o]ther than [the co-conspirator]'s testimony, the admitted evidence shed little light on [the defendant]'s intent and whether his alleged crime was the result of mistake or accident").

Having found the challenged evidence to be highly probative, we must weigh its value against the risk of *unfair* prejudice. First, the close temporal proximity of Castro-Flores's 2009 conviction to his 2012 smuggling operation significantly reduces the danger of unfair prejudice. *See Cockrell*, 587 F.3d at 680 (holding that a conviction in 2000 was temporally proximate to the offense for which defendant was arrested in 2007, and citing additional cases in support). Second, the district court provided a limiting instruction to the jury, and this court "has held that such an instruction cures any impropriety, or inference of impropriety, in the admission of prior bad acts evidence." *Olguin*, 643 F.3d at 390; *see also Broussard*, 80 F.3d at 1040 (finding that any prejudice from introduction of prior offenses was minimized by the district court's limiting instruction given immediately after the extrinsic evidence was offered).

No. 15-20053

On balance, we do not find that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice. Because the evidence was both relevant and necessary to prove Castro-Flores's intent, and because the district court provided an appropriate limiting instruction to the jury, the district court did not abuse its discretion in allowing it.[3]

Castro-Flores also argues that the district court erred in denying his motion to strike Juror 4 for cause because Juror 4 was worried about being bribed, most likely by the defendant. This issue arose when Juror 4 expressed his concerns to the trial judge's case manager. "[T]he remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips*, 455 U.S. 209, 215 (1982). Here, the trial judge brought Juror 4 into chambers for questioning with counsel for both sides present. After Juror 4 assured the trial judge of his impartiality, the defense counsel had an opportunity to ask questions. Juror 4 assured the defense counsel that he had not formed any conclusions or pre-judged the case in any way, and the discussion ended. The defense did not offer any additional evidence or argument to show that Juror 4 was biased or impartial. Based on the record, we find that the defense failed to demonstrate any bias on the part of Juror 4. Furthermore, by conducting a hearing in chambers and giving the defense the opportunity to question Juror 4, the trial judge took adequate

---

[3] This holding is consistent with our prior cases. *See Hernandez-Guevara*, 162 F.3d at 871–72 (evidence of defendant's prior convictions showed intent and lack of mistake in conspiracy to transport aliens); *United States v. Ortega-Chavez*, 682 F.2d 1086, 1091 n.6 (5th Cir. 1982) (evidence of defendant's prior attempts to smuggle undocumented aliens showed knowledge, intent, and modus operandi); *United States v. Madrid*, 510 F.2d 554, 556 (5th Cir. 1975) (evidence of defendant's prior confession, where he admitted to transporting people he knew were illegal aliens on a prior occasion, showed knowledge, a necessary element of the charged crime and the central issue at trial). In fact, our recent cases have affirmed with only a cursory discussion of this issue. *See United States v. Santiago,* 402 F. App'x 881, 882 (5th Cir. 2010); *United States v. Aguilar*, 307 F. App'x 815, 816–17 (5th Cir. 2009); *United States v. Smith*, 172 F. App'x 627, 628 (5th Cir. 2006).

No. 15-20053

precautions to dispel any "reasonable possibility of prejudice." *See United States v. Ramos*, 71 F.3d 1150, 1154 (5th Cir. 1995). And no evidence suggests that Juror 4's concerns had any impact on the other jurors. *See United States v. Olano*, 507 U.S. 725, 739 (1993) (noting that the "ultimate inquiry" is whether the alleged intrusion affected the jury's deliberations, and thereby its verdict). In sum, Castro-Flores has failed to meet his burden to show that Juror 4 was biased or that the jury's verdict was tainted. We find no abuse of discretion.[4]

## IV.

For the reasons described above, we AFFIRM.

---

[4] In his brief, Castro-Flores relies on *United States v. Taylor*, 554 F.2d 200 (5th Cir. 1977). *Taylor* is highly distinguishable. There, we held that a trial judge abused his discretion for failing to excuse a juror where the juror "told the court that her life was involved, that she lived in the neighborhood with the defendants, that the incidents happened in close proximity to where she once lived, that she had to go out of her way to avoid the defendant, that she had been a victim of the defendants, and that as a result she did not know whether she could be openminded about the trial." *Id.* at 202. Furthermore, the trial judge failed to reveal any of this information to the defense counsel. *Id.*