Charles William BASS, Appellant,

v.

The STATE of Texas, Appellee.

No. 68308.

Court of Criminal Appeals of Texas, En Banc.

Sept. 23, 1981.

Rehearing Denied Oct. 28, 1981.

Victor Blaine, Allen C. Isbell, on appeal only, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. & Ray Elvin Speece & Bert Graham, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for capital murder. V.T.C.A. Penal Code, Sec. 19.03(a)(1). After finding appellant guilty, the jury answered "yes" to the three special issues submitted under Art. 37.071(b), V.A. C.C.P. Punishment was assessed at death.

In his fourth ground of error, appellant contends the court erred in admitting evidence of an extraneous offense. He maintains such evidence was admitted solely to inflame the jury.

Patricia Warren testified that on the night of August 16, 1979, she was employed at Shirlee's Lounge in Houston. She related that appellant entered the lounge and ordered a beer. Upon serving appellant, Warren noticed that he had drawn a handgun which he was pointing toward a customer. Warren related that appellant told her to open the cash register and give him the money. Included within the currency given to appellant were several coins which were wrapped in paper coin rollers.

R. A. McCammon testified that on the night of August 16, 1979, he and Charles Baker were employed by the City of Houston as Houston City Marshalls. McCammon explained that their primary duty consisted of serving misdemeanor arrest warrants issued by judges of the municipal courts. While McCammon and Baker were on duty, they saw appellant walking on a sidewalk in a residential area. McCammon related that appellant was stopped because it was thought that he was named in an arrest warrant. At the time he was stopped, it was noticed that appellant was perspiring heavily and that his pocket was bulging with an unknown object. McCammon related that he thought appellant was armed with a chain. However, he discovered that appellant's pocket was full of coins wrapped in paper coin rollers.

McCammon testified that he moved the patrol car while Baker had control of appellant. While moving the car, McCammon heard Baker call for help. He saw appellant and Baker struggling and heard a gunshot. Baker fell to the ground and another shot was fired. McCammon stated that he then drew his own weapon and fired at appellant. The two men exchanged numerous gunshots and appellant eventually ran away. When McCammon approached Baker, he found the officer's handgun on the ground. The gun had not been fired.

Baker died as a result of two gunshot wounds. Dr. Aurelio Espinola, assistant medical examiner for Harris County, testified that one of the gunshot wounds had been a skin contact wound to the stomach. Espinola explained that a skin contact wound results from a weapon being held at close range at the time it is fired at the victim. The other wound, showing no evidence of skin contact, was to the officer's thigh. During an autopsy, two slugs were recovered from Baker's body, Espinola testified that either of the gunshot wounds could have been fatal.

Officer C. W. Kent, of the Houston Police Department, conducted the investigation concerning Baker's death. Kent testified that the gun used to kill Baker was never recovered.

Appellant testified that he committed the robbery at Shirlee's Lounge after realizing that he did not have enough money to pay for the beer he had ordered. He further stated that following the robbery, he had approached McCammon and Baker's patrol car thinking it was a taxi cab. Appellant shot Baker after pulling a gun from inside his pants. He related that at the time of the shooting, Baker was directly behind him and was attempting to subdue him by grabbing him from behind. Appellant stated that he shot Baker because he was afraid that he was going to have his "ass whipped" by the officers. He testified that he had been abused by law enforcement officers on the eight or nine previous occasions on which he had been arrested. Appellant further admitted to engaging in an exchange of gunfire with McCammon.

The gun appellant used to shoot Baker was thrown into the San Jacinto River. Appellant denied having shot Baker twice. He maintained that he did not shoot the officer in order to kill him, but rather in order to escape the threat of being "whipped."

The extraneous offense of which appellant complains in this ground of error was admitted through the testimony of Theresa Minor. She testified that she knew appellant and that he was at her home two days

before Baker was shot. Minor related that appellant was armed with a handgun which he fired twice in the direction of a neighbor's home.

Officer Paul Motard, of the Houston Police Department, testified that he retrieved a slug which was embedded within the wall of the neighbor's home. The slug was compared with the two slugs which were removed from Baker's body. Officer C. E. Anderson, a firearms examiner for the Houston Police Department, testified that all three slugs had been fired from the same handgun.

■ It is well established that an accused may not be tried for some collateral crime or for being a criminal generally. *Hines v. State*, 571 S.W.2d 322. In *Albrecht v. State*, 486 S.W.2d 97, several exceptions to this rule were recognized including: (1) when the extraneous offense is res gestae of the charged offense; (2) to prove identity; (3) to rebut a defensive theory; (4) to prove guilty knowledge; (5) to prove intent; (6) to prove motive; (7) to prove system; or (8) in a circumstantial evidence case.

■ As stated above, the extraneous offense of which appellant now complains consisted of his actions in firing a handgun in the direction of a residence. Such offense was in no way blended or closely interwoven with the killing of Baker and thus cannot be termed res gestae. There was no question of identity in view of McCammon's testimony and appellant's admission. Likewise, the evidence was not circumstantial in nature. To the extent that appellant's testimony denying an intent to kill Baker constituted a defensive theory, such was not rebutted by the extraneous offense. Likewise, appellant's intent was established by evidence that he shot the victim at close range with a firearm. Appellant's own testimony supplied the motive for the killing when he stated that he shot Baker in order to avoid being "whipped." Finally, no issue of system or design was present in the case.

We conclude that the extraneous offense of appellant firing a weapon at another's home was erroneously admitted. Such an offense could constitute reckless conduct, criminal mischief or unlawfully carrying a weapon. No evidence was offered to show damage resulting, if any, from the firing of the weapon to elevate the offense above the grade of a misdemeanor. See V.T.C.A. Penal Code, Secs. 22.05, 28.03 and 46.02.

■ A judgment will not be reversed for the erroneous admission of evidence that did not injure the defendant; the question is whether there is a reasonable probability that the evidence complained of might have contributed to the conviction. *Esquivel v. State*, 595 S.W.2d 516. Thus, the decision as to whether the erroneous introduction of an extraneous offense is reversible error is an ad hoc determination based on the merits of each case. *Ruiz v. State*, 579 S.W.2d 206.

■ In the instant case, evidence of appellant's guilt was overwhelming. McCammon saw appellant and Baker struggling before Baker was shot. Appellant admitted that he shot Baker when the officer was directly behind him. The medical examiner testified that the skin contact wound to the victim's stomach would have resulted in death within three to five minutes. The extraneous offenses of the aggravated robbery at Shirlee's Lounge and the attempted capital murder of McCammon were admitted without objection. Both offenses are first degree felonies. While testifying, appellant stated that he had been arrested on eight or nine previous occasions.

We conclude that in view of the other evidence presented at trial, there is not a reasonable probability that the complained of misdemeanor extraneous offense might have contributed to appellant's conviction or had any effect upon punishment assessed. No reversible error is shown.

■ In his second ground of error, appellant contends the court erred in refusing to discharge juror Marilyn Turner. He maintains the juror was disabled due to "a prejudice and bias in her attitude."

The record reflects that voir dire examination in the instant case began on April 22, 1980, and Turner was selected as the fourth juror on April 28, 1980. The voir dire examination was completed when the twelfth juror was selected on May 16, 1980.

On May 27, 1980, prior to the commencement of the trial, the court held a hearing to determine whether juror Turner had become disabled from sitting on the jury. Turner testified that two days before the hearing, an individual had broken into her home and entered her bedroom with a knife. She related that appellant was not the individual who entered her home and that the actual perpetrator of the offense had been apprehended. Turner stated that she wanted to "disqualify" herself as juror and that she had doubts as to her ability to "impartially judge."

Appellant contends that due to "a bias and prejudice in her attitude," the court should have found Turner to have been disabled from sitting on the jury and provided him with the following options "(1) Ask if Appellant would agree to proceeding with eleven jurors; (2) select another juror to replace Turner; or (3) declare a mistrial and select another jury." Appellant's contention is based upon the premise that Turner was disabled due to bias and prejudice against him and that she should have been discharged as disabled from sitting on the jury.

As stated above, the jury selection process had been completed at the time the court learned of Turner's experience. The parties were unable to agree as to the matter of her discharge. The question thus becomes whether she was disabled and should have been declared as such by the court under the provisions of Art. 36.29, V.A.C.C.P. That statute provides:

"Not less than twelve jurors can render and return a verdict in a felony case. It must be concurred in by each juror and signed by the foreman; provided, however, when pending the trial of any felony case, one juror may die or be disabled from sitting at any time before the charge of the court is read to the jury,

the remainder of the jury shall have the power to render the verdict; but when the verdict shall be rendered by less than the whole number, it shall be signed by every member of the jury concurring in it. After the charge of the court is read to the jury, if any one of them becomes so. sick as to prevent the continuance of his duty, or any accident of circumstance occurs to prevent their being kept together under circumstances under which the law or the instructions of the court requires that they be kept together, the jury may be discharged."

In *Carrillo v. State*, 597 S.W.2d 769, the defendant urged the court erred in discharging a juror as disabled under the terms of Art. 36.29, supra, due to her alleged bias and prejudice. This Court concluded that the trial court's actions had been erroneous because the term disabled under Art. 36.29, supra, does not encompass bias and prejudice as a disability. We further stated:

"We conclude that the trial court before discharging the juror should have advised the appellant he would continue the trial without discharging the juror unless the appellant either agreed to continue the trial with eleven jurors or asked for a mistrial. The court should then, depending on the appellant's election, have granted a mistrial or continued with eleven jurors. If the appellant refused to make an election the court should not have discharged the juror, but continued the trial without discharging the juror. The trial court erred in failing to give the appellant an opportunity to choose between continuing with eleven jurors or seeking a mistrial." Id. at 771.

Likewise, in *Marguez v. State*, 620 S.W.2d 141, it was found that there was no basis shown to support the trial court's ruling that a juror was disabled under Art. 36.29, supra. It was thus concluded that the erroneous ruling resulted in the defendant being convicted by a jury of eleven instead of twelve and that the conviction must be reversed.

In the instant case, the court did not propose to discharge Turner as disabled. Rather, appellant sought to have her discharged and declared disabled due to bias and prejudice. Such an alleged condition does not render a juror disabled under Art. 36.29, supra. *Carrillo v. State,* supra. Had the court discharged Turner on the basis of bias and prejudice, without the consent of all parties, such a ruling would have been erroneous. No error is shown in the court refusing to find Turner disabled due to her alleged bias and prejudice. Appellant's second ground of error is overruled.

In his third ground of error, appellant further contends the court erred in refusing to discharge juror Turner. He maintains that she was disabled from sitting because she was "unable to concentrate mentally on the testimony."

With regard to the effect of the burglary on her ability to concentrate, Turner stated:

"Q. ... But we are trying to find out how you feel, see what the possibilities are. If the law was such that you couldn't be disqualified from this jury, since you have already been picked, would you do the best you could to try to be fair, not let what happened to you this past weekend affect your verdict?

"A. As I said, it's very hard for me to concentrate. My concentration is totally numb. I don't think I would be able to pay attention to what was going on. I have not been able to do my work. I have not been able to sleep. As I said, I don't think that's going to go away. It's going to take time.

"Q. I'm not trying to force you to do something that you feel like that you don't want to do. Of course, nobody wants to.

"A. I'm willing to do by civic duty or I would not have come in.

"Q. That's the point I'm trying to make. It's just that we may not have any alternative but to keep you on the jury legally. If that happened, I'm hoping you would be able to try to listen to the evidence as best you could.

"A. The best I could, but my concentration is not there."

After the court refused to find Turner disabled, the following colloquy took place:

"THE COURT: Mrs. Turner, for the record, I must advise you that the law does not permit the Court to excuse you from this jury once you have been sworn, under the circumstances. Now, because of the events that you related to the Court and to the Attorneys for both the Prosecution and the Defense, I'd like to request and instruct you not to discuss your personal misfortune with any of the other jurors, because those facts have no bearing upon the facts in this case. And the law does contemplate that jurors, once they are sworn, that they will follow the law the Court has given to them in the instructions to the jury. Do you think you will have any difficulty in following the Court's instructions with regard to the law?

"MRS. TURNER: I will do my best."

As in the previous ground of error, appellant sought to have the court discharge Turner as disabled pursuant to Art. 36.29, supra. The matter arose after completion of the jury selection process. The parties were unable to agree as to the matter of her discharge. The issue is therefore whether the court abused its discretion in refusing to discharge Turner as disabled from sitting on the jury.

In *Griffin v. State,* 486 S.W.2d 948, it was stated that the term disabled within Art. 36.29, supra, means any condition that inhibits the juror from fully and fairly performing the functions of a juror. In *Carrillo v. State,* supra, it was concluded that the Legislature's intent was to limit the application of Art. 36.29, supra, to those cases where the juror was physically or mentally impaired in some way or all the parties consented to trying the case with just eleven jurors. The determination as to whether a juror is disabled is within the discretion of the trial court. Absent an abuse of that

discretion, no reversible error will be found. *Griffin v. State*, supra.

In support of his contention that the court erred in refusing to discharge Turner as emotionally disabled, appellant relies on *Clark v. State*, 500 S.W.2d 107. There, the court found a juror emotionally disabled due to the death of his father-in-law and the need to travel immediately to Louisiana with his wife. However, unlike the instant case, both parties in *Clark* consented to the court's action in discharging the juror as disabled. In finding no error in the discharge of the juror, this Court stated:

> "Here the court found that the juror was disabled. Both appellant in person and his attorney agreed to this finding and to proceed with eleven jurors. Evidently they did not consider that the judge was abusing his discretion, else an issue could have been made and evidence heard, from which this Court might determine whether abuse of discretion existed. We perceive none, and overrule ground of error number two." *Id.* at 109.

In the instant case, Turner was understandably upset at the time of the hearing. She indicated that she was having difficulty in concentrating and was at times nauseous. On the other hand, she stated that she was willing to do her "civic duty" and would do "the best [she] could" while serving on the jury. Appellant did not question Turner at the time he sought to have the court discharge her as disabled. Further, there was no evidence offered at the hearing on appellant's motion for new trial with regard to the effect, if any, which the incident had on Turner's verdict at either phase of the trial or any difficulty she may have had as serving as a juror.

In determining whether the court abused its discretion in failing to discharge Turner as disabled, this Court has been provided with nothing more than a cold record. However, at the time of the hearing, the trial court, in determining the issue, had the opportunity to observe Turner's demeanor and listen to the tone of her voice. Based upon this record, we cannot conclude the court abused its discretion in refusing to discharge Turner as disabled from sitting on the jury. Appellant's third ground of error is overruled.

In his first ground of error, appellant contends the court erred in sustaining the State's challenge for cause to prospective juror John Mooney. The venireman was excused on the basis of a mental defect which rendered him unfit for jury service.

Mooney testified that he had been committed to a mental hospital in San Antonio for twenty-nine years. In another portion of his testimony, the seventy-one-year-old venireman related that his commitment had been from 1936 until 1969. Mooney stated that his commitment had resulted from being declared "a person of unsound mind." He testified that he had suffered a "mental disorder" as a result of a blow to the head in an automobile accident. Following his release from San Antonio, Mooney was referred to the Texas Research Institute of Mental Science (TRIMS) in Houston. He testified that he is classified as an outpatient at TRIMS and has a monthly appointment with a psychiatrist. Mooney related that the psychiatrist has prescribed medication for him, including a daily dosage of Thorazine, which he will be required to take for the rest of his life.

Following his discharge in San Antonio, Mooney was employed by Rice University until retirement. The record does not reflect how long he was so employed. He related that at the present time, as a hobby, he is a locksmith. Mooney stated that he is married and manages his own affairs other than those taken care of by his wife. Finally, Mooney related that following this discharge from San Antonio, he had not gone through a formal restoration proceeding. See Tex.Rev.Civ.Stat.Ann. Art. 5547–83(c) (Supp. 1980–1981).

Art. 35.16, V.A.C.C.P., sets forth the various reasons upon which challenge for cause may be made to a prospective juror. In that regard, Art. 35.16(a)(4), supra, provides:

> "(a) A challenge for cause is an objection made to a particular juror, alleging some

fact which renders him incapable or unfit to serve on the jury. A challenge for cause may be made by either the state or the defense for any one of the following reasons:

" . . . .

"4. That he is insane or has such defect in the organs of feeling or hearing, or such bodily or mental defect or disease as to render him unfit for jury service, or that he is legally blind and either the court or the state in its discretion or the defendant or the prospective juror in his discretion is not satisfied that he is fit for jury service in that particular case;"

In *Von Byrd v. State*, 569 S.W.2d 883, the defendant urged that the trial court had erred in granting a State's challenge for cause to a prospective juror based upon Art. 35.16(a)(4), supra. No error was found in the sustaining of the challenge and we stated as follows:

"The evidence in the present case is very sparse. There was documentary evidence that Bailey had been adjudged insane on March 2, 1976. Cf. Article 35.18, Vernon's Ann.C.C.P. There was also evidence that Bailey was 'unstable' on October 24, 1976. Of course, Bailey testified that she had been released from Rusk, and that she had undergone a restoration hearing, and that she was not under the care of a doctor or taking medication. However, we conclude that the trial judge, as the trier of fact on the issue of whether Bailey was properly subject to challenge for cause pursuant to Article 35.16(a)(4), did not abuse his discretion by excluding Bailey. Appellant's fourth contention is overruled." (Footnotes omitted) *Id.* at 892.

The record in the instant case reveals that after being declared "a person of unsound mind," Mooney had been committed to a mental institution for at least twenty-nine years. Unlike the prospective juror in *Von Byrd*, Mooney had not undergone a restoration hearing and he was still under the care of a doctor. Finally, he was on daily medication which is indicated "for the management of manifestations of psychotic disorders.[1]" We find no abuse of discretion in the court, as the trier of the facts, sustaining the State's challenge for cause to Mooney under Art. 35.16(a)(4), supra. Appellant's first ground of error is overruled.

■ In his fifth ground of error, appellant contends the court erred in granting the State's challenge for cause to prospective juror Marian Hall. He maintains that "Hall was improperly excluded under the rationale of *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980) and *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)."

The record reflects that at the time the State's challenge for cause was made and sustained, appellant failed to voice an objection to the court's action. In *Crawford v. State*, 617 S.W.2d 925, we noted that this Court has consistently held that the failure to object to the alleged improper exclusion of a prospective juror in a capital murder trial, waives the error for purposes of appeal. We find that appellant may not complain of the exclusion of prospective juror Hall for the first time in this appeal. See *White v. State*, 610 S.W.2d 504; *Boulware v. State*, 542 S.W.2d 677.

■ In his sixth ground of error, appellant contends the court erred in granting the State's challenge for cause to prospective juror Mildred Spensley. He maintains Spensley was improperly excluded under *Adams v. Texas*, supra, and *Witherspoon v. Illinois*, supra.

The record reflects that during the voir dire examination, Spensley was asked the following question by the prosecutor:

"Q. To make sure, I've got to get it clear for the record, you feel like you could not participate in a capital murder case; if you get to the punishment part of the trial and evidence was presented to you that convinced you beyond a reasonable doubt that he did it deliberately and

1. Baker, Physicians' Desk Reference 1691 (35th ed. 1981).

there was a probability he would do violent criminal acts again and the answers to those questions should be yes and the evidence convinced you beyond a reasonable doubt, you still would not be able to say yes to the questions because you know if you did, he would get the death penalty; is that accurate or not?

"A. Yes."

In an apparent effort to rehabilitate the prospective juror, appellant's counsel asked her:

"Q. . . . Don't you feel if you were a member of this jury, that you could vote whatever you said your conscience should be, if they so convinced you that this young man deliberately killed someone and that he, from the evidence you would hear from the witness stand, would more likely—that there is a probability he would again commit criminal acts of violence, don't you think you could say yes to a question if you felt that way?

"A. No.

"Q. Regardless of what the facts were?

"A. No, I don't."

As this Court noted in *White v. State*, 543 S.W.2d 104:

"... it was made abundantly clear in *Witherspoon* that the decision reached therein had no bearing on the right of the prosecution to challenge for cause any prospective juror who stated that he would automatically vote against the imposition of capital punishment without regard to the evidence which might be developed at the trial or that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt." *Id.* at 106.

Spensley's testimony thus reflects she would have voted in such a manner as to avoid the death penalty for appellant without regard to the evidence which might be developed at trial. Under such circumstances, she was properly excused under the standards set forth in *Witherspoon*. See

*Esquivel v. State*, 595 S.W.2d 516. We further note that appellant's failure to object at the time Spensley was excused, preserves nothing for review. *Crawford v. State*, supra. Appellant's sixth ground of error is overruled.

The judgment is affirmed.

McCORMICK, J., concurs in result.

ROBERTS and TEAGUE, JJ., dissent.

CLINTON, J., not participating.