

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00306-CR

RAFAEL MONTEAGUDO, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 181st District Court
Randall County, Texas
Trial Court No. 24,113-B, Honorable Andrew Kupper, Presiding

May 27, 2014

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Rafael Monteagudo, Jr., appeals the trial court's judgment in which he was convicted of the first-degree felony offense of manufacture or delivery of a controlled substance, namely methamphetamine, in an amount of four grams or more but less than 200 grams, and sentenced to sixty years' imprisonment as punishment for said offense.[1]  On appeal, he contends that the trial court erred in concluding that one

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (West 2010).

juror had become disabled early in the punishment phase, dismissing that juror from his service, and proceeding with the trial on punishment with eleven jurors.  We will affirm.

Factual and Procedural History

Because appellant challenges only the trial court's dismissal of one juror and its decision to proceed with the trial on punishment with eleven jurors, we limit our recitation of the facts to the minimal facts necessary to place appellant's contentions in the proper context.

Appellant was arrested and charged with delivery or manufacture of a controlled substance, namely methamphetamine, in an amount of four grams or more but less than 200 grams.  A Randall County jury found appellant guilty of the charged offense. Foreman of that convicting jury was Juror A, who will be the subject of our analysis. The day after the jury returned its guilty verdict, the State began to present its evidence on punishment, appeared poised to introduce evidence of appellant's past bad acts, and, as its first witness, called Jacob Rincon.  As it turns out, Rincon is the son of the late victim of one of appellant's past crimes.  Rincon's father—we will call him Rincon Sr.—was killed when appellant, while driving intoxicated, struck Rincon Sr.'s motorcycle; Rincon Sr. died five days later from the severe injuries sustained in the collision.

Within moments of Rincon taking the stand and after Rincon identified himself and described his family generally, Juror A alerted the trial court that he needed to speak to the trial court.  Juror A, entirely unaware of the association between appellant and Rincon Sr.'s death until the point at which Rincon identified himself, explained to

2

the trial court that he knew and worked with Rincon Sr. and that the two men had a close relationship. As soon as Juror A realized who Rincon was and made the connection between the Rincon family and appellant, he alerted the trial court.

The trial court examined Juror A rather extensively during an initial exchange at the bench, a conference in chambers, and a more formal examination in the courtroom to assess the circumstances and impact of Juror A having discovered the connection. The trial court was certain to confirm that Juror A was unaware of that connection until punishment evidence began, making certain that such knowledge could not have had any influence whatsoever on Juror A's assessment of the evidence in the guilt-innocence phase of trial and could not have influenced his verdict.[2] Juror A agreed that the connection had "never occurred" to him until he recognized who Rincon was.

In addition to the trial court's careful questioning in that regard, it thoroughly examined Juror A with respect to the impact his newly-acquired knowledge would have on him throughout the remainder of the trial on punishment. After establishing that Juror A "knew [Rincon Sr.] well" through their work and confirming that appellant was responsible for Rincon Sr.'s death, the exchange continued in which Juror A initially and perhaps tentatively explained that he would likely be able to continue, but, when pressed for certainty on the matter, Juror A seemed to express doubt as to his ability to faithfully perform his duties as a juror:

---

[2] The trial court was also careful to determine whether Juror A had divulged this information to remaining jurors. Juror A explained to the trial court that he had not shared with them the specific details of the issue, only that he had to discuss a situation with the trial court. Further examination of Juror A confirmed that he did not share with the panel the nature of the situation he needed to discuss with the trial court.

THE COURT: And you know that Mr. Rincon's father was killed in a wreck?

JUROR A: Uh-huh.

THE COURT: And I guess you've gathered so far that this Defendant in this case may be the one that may have hit him.

JUROR A: I feel – with him up there, there's something related.

THE COURT: Okay. Now then, knowing that, that Mr. Rincon is going to testify that his father was the victim where Mr. Monteagudo is accused –

JUROR A: Right.

THE COURT: – of hitting him –

JUROR A: Yes, sir.

THE COURT: – in a case that we would call intoxication manslaughter. Okay?

JUROR A: Yes, sir.

THE COURT: And that will come out. Knowing that, and knowing Mr. Rincon, Sr. – or the father, as you do, would that affect your ability to render a fair and impartial verdict in – on punishment in this case?

JUROR A: I don't think so. I just wanted – I just wanted everybody to know that I – when it – when he said his name and what his dad's name was, it rang a bell.

THE COURT: So you think you could still be fair?

JUROR A: Yes, sir.

THE COURT: You think that you could sit in the box and kind of set your relationship with Mr. Rincon [Sr.] aside and say, I'm not going to base my verdict on anything except what I think I hear from the witness stand and what I think will be fair to the State and the Defendant? You've got to be absolutely positive that you can do that.

JUROR A: I don't think I'm positive I can do that, no, sir.

THE COURT: Okay. So you feel like that that would affect –

JUROR A: It could, yes.

THE COURT: Well, "it could" is –

4

JUROR A: Yes.

THE COURT: It would?

JUROR A: Yes.

THE COURT: Is that what you're telling me?

JUROR A: Yes.

Later, the trial court swore in Juror A and further examined him on the matter, reiterating the nature of the relationship between Juror A and Rincon Sr. and assessing the impact Juror A's knowledge that appellant was responsible for Rincon Sr.'s death would have on Juror A:

THE COURT: And you had a close relationship with him, I believe, you told me.

JUROR A: Well, I knew him real well.

THE COURT: You knew him real well.

JUROR A: He was our painter.

THE COURT: And when I asked you a question earlier about being fair and impartial and you said, well, he's deceased, it appeared to me that you had some emotional feelings about that when I asked you that.

JUROR A: Yes, sir.

THE COURT: And your response to me indicated that you had an emotional response to it.

JUROR A: Yes, sir.

THE COURT: Would that be true?

JUROR A: Yes, sir.

THE COURT: Further, you have stated, before I brought you back in here, that you felt like your knowledge of this situation would affect your ability to be fair –

JUROR A: Yes, sir.

5

THE COURT: – to the Defendant in this case.

JUROR A: Yes, sir.

THE COURT: And would you say that this knowledge that you have would substantially impair your ability to serve as a juror and assess punishment in this case?

JUROR A: Yes, sir.

State's counsel declined the opportunity to question Juror A, but defense counsel did briefly examine him and, presumably in an effort to support his request for a new jury, emphasized the visible physical reaction Juror A had to the discovery:

DEFENSE COUNSEL: Sir, I noticed whenever you raised your hand and said you need a minute or – I don't remember the exact words, and even now, you look physically distraught?

JUROR A: Yes.

DEFENSE COUNSEL: And that's – the thought of what you – what – your friend having passed, and you having to listen to testimony about is physically distressing to you, isn't it?

JUROR A: Yes.

DEFENSE COUNSEL: And you – your demeanor hasn't changed from right there in the jury box through the three times you've been in here talking to us, has it?

JUROR A: No.

DEFENSE COUNSEL: I'm sorry about this situation and I appreciate your honesty.

JUROR A: Yes, sir.

As defense counsel later urged the trial court to impanel a new jury rather than proceed on punishment with eleven jurors, he again noted that Juror A had "physically changed in appearance once he noticed this because it affected him so much. I think that taints the entire jury . . . ."

6

The trial court denied appellant's motion for mistrial and his request for a new jury. The trial on punishment continued with eleven jurors, all of whom signed the verdict form as confirmed by the trial court and all of whom were polled *sua sponte* by the trial court immediately after the jury's verdict was announced. Appellant timely filed his notice of appeal and brings to this Court his complaint regarding the dismissal of Juror A and the trial court's decision to proceed with eleven jurors. We will affirm.

Clarifying the Issue on Appeal

On appeal, appellant advances the contention that the trial court's failure to comply with the strictures of the governing procedural provision and its attendant decision to continue with the trial on punishment "denied the Appellant both due process and equal protection of law." We address appellant's contention regarding the propriety of the trial court's dismissal of Juror A to the extent that he raised the issue in the trial court. And, in the trial court, appellant made no mention of any constitutional consideration relating to the dismissal of Juror A. For that reason, we will examine the issue as it was raised below, that is, as one complaining of the trial court's compliance with applicable procedural rules and without reading into it the constitutional implications now raised on appeal.

We add that such an approach is consistent with authority that regards the failure of a trial court to adhere to a statutory procedure that is related to a constitutional provision as simply a violation of that statute, not a violation of the constitutional provision itself. *See Ex parte Long*, 910 S.W.2d 485, 486 (Tex. Crim. App. 1995) (en banc); *see also Ex parte Sadberry*, 864 S.W.2d 541, 543 (Tex. Crim. App. 1993) (en

7

banc) (characterizing the issue of whether defendant's failure to sign a written jury waiver violated a defendant's constitutional right to a jury trial as one that "involve[d] an irregularity in the proceedings in the trial court," not "a question of constitutional dimension").

Applicable Law and Standard of Review

Generally, the Texas Constitution requires that the jury in a felony trial be composed of twelve members. *See* TEX. CONST. art. V, § 13. However, the right to a twelve-member jury is not absolute. Texas Constitution also provides as follows:

> When, pending the trial of any case, one or more jurors not exceeding three, may die, or be disabled from sitting, the remainder of the jury shall have the power to render the verdict; provided, that the Legislature may change or modify the rule authorizing less than the whole number of the jury to render a verdict.

*Id.* Pursuant to this constitutional authority, the Legislature enacted a provision to govern such circumstances:

> Not less than twelve jurors can render and return a verdict in a felony case. It must be concurred in by each juror and signed by the foreman. Except as provided in Subsection (b), however, after the trial of any felony case begins and a juror dies or, as determined by the judge, becomes disabled from sitting at any time before the charge of the court is read to the jury, the remainder of the jury shall have the power to render the verdict; but when the verdict shall be rendered by less than the whole number, it shall be signed by every member of the jury concurring in it.

TEX. CODE CRIM. PROC. ANN. art. 36.29(a) (West 2013); *see Chavez v. State*, 91 S.W.3d 797, 800 (Tex. Crim. App. 2002) (citing *Johnson v. State*, 525 S.W.2d 170, 171 (Tex. Crim. App. 1975)).

8

The Texas Court of Criminal Appeals has observed that Article 36.29's language and the cases applying Article 36.29 make clear that the Legislature's intent was to limit the article's application to those cases where the juror was physically or mentally impaired in some way which hindered his ability to perform his duty as a juror. *See Brooks v. State*, 990 S.W.2d 278, 286 (Tex. Crim. App. 1999) (en banc) (citing several cases illustrating instances of a "disabled" juror); *Ramos v. State*, 934 S.W.2d 358, 369 (Tex. Crim. App. 1996) (interpreting "disabled from sitting" as referring to a physical, mental, or emotional disability). Put another way, a juror becomes disabled if he develops a "'physical illness, mental condition, or emotional state' which hinders [his] ability to perform [his] duties as a juror." *See Hill v. State*, 90 S.W.3d 308, 315 (Tex. Crim. App. 2002) (concluding that juror was unable to perform her duties and was, therefore, "disabled" under Article 36.29 when she suffered from "debilitating panic attacks" and quoting *Landrum v. State*, 788 S.W.2d 577, 579 (Tex. Crim. App. 1990) (en banc) (per curiam)). A juror's bias or prejudice for or against a defendant, however, does not render a juror "disabled." *Reyes v. State*, 30 S.W.3d 409, 412 (Tex. Crim. App. 2000) (en banc); *see Bass v. State*, 622 S.W.2d 101, 105 (Tex. Crim. App. 1981) (en banc).

The Texas Court of Criminal Appeals has upheld a trial court's decision to excuse a juror for disability who was emotionally upset over the death of his father-in-law and needed to go out of state to be with his wife. *See Clark v. State*, 500 S.W.2d 107, 108–09 (Tex. Crim. App. 1973). Also, a juror who testified that he had made arrangements to move from McAllen to Houston for a new job, that he had to begin the job on March 1 or lose it, and that he had given notice that he was vacating his

9

apartment was found to be "disabled" within the meaning of Article 36.29. *See Ramos*, 934 S.W.2d at 369. The juror had initially believed that the trial would be finished by the time he had to move and start his new job, but later developments, it seems, had made it unlikely that trial would be complete by the time the juror had to move. *See id.* When questioned by the trial court, the juror explained that his changed circumstances would impair his ability to serve on the jury and diminish his ability to concentrate and that he considered himself mentally and emotionally disabled to serve. *See id.* In affirming the trial court's dismissal on the basis that the juror had become "disabled," the *Ramos* court observed as follows:

> In the present case, there is evidence in the record that [the juror] would be unable to concentrate due to the time pressures associated with moving and starting a new job. We have held that emotional pressures due to an illness in the family will justify discharge under Article 36.29. . . . Likewise, the emotional pressures suffered by [the juror] justify the trial court's decision to discharge him.

*Id.* (citing *Carrillo v. State*, 597 S.W.2d 769, 770 (Tex. Crim. App. [Panel Op.] 1980)).

After being sworn but before trial began, a single-parent juror in *Owens v. State*, 202 S.W.3d 276, 277 (Tex. App.—Amarillo 2006, pet. ref'd), informed the trial court that she had been unable to obtain child care and transportation for her special needs son. She stated to the trial court that her concern for her son would cause her to be unable to focus her attention upon the trial. *See id.* In light of those circumstances, the trial court concluded that the juror was "disabled" within the meaning of Article 36.29, released her from duty, and proceeded to trial with the remaining eleven jurors. *See id.* On appeal, this Court upheld the trial court's ruling. *Id.* (citing *Edwards v. State*, 981 S.W.2d 359, 367 (Tex. App.—Texarkana 1998, no pet.), for similar holding on similar circumstances).

10

To illustrate an instance when a dismissed juror was *not* "disabled" per Article 36.29, we look to *Brooks*. In *Brooks*, the juror in question was arrested on the morning the punishment trial was to begin for entering the courthouse with a handgun. *See Brooks*, 990 S.W.2d at 286. Appellant unsuccessfully moved for a mistrial and then requested that the trial court remove the juror on the grounds that he was "disabled," a request the trial court also denied; the trial court allowed the juror to remain. *See id.* When appellant contended that the trial court should have dismissed the juror as "disabled," the Texas Court of Criminal Appeals disagreed: the juror in question had not suffered from a physical illness, mental condition, or emotional state which affected his ability to perform the duties assigned to him as a juror. *See id.* In fact, the *Brooks* court pointed out, the trial court asked the juror whether "this experience you've had this morning in any way impedes your ability to be fair to both sides in the trial of the punishment?" *See id.* The juror responded to the trial court's inquiry, "No, sir, it had nothing to do with the trial at all." *Id.* The court concluded that the *Brooks* juror was not disabled as envisioned by Article 36.29. *Id.*

The determination as to whether a juror has become "disabled" within the meaning of Article 36.29 lies within the trial court's discretion; absent an abuse of such discretion, we will find no reversible error. *See Scales v. State*, 380 S.W.3d 780, 784 (Tex. Crim. App. 2012) (op. on reh'g). Therefore, to support its judgment, the trial court must make a finding, one sufficiently supported by the record, that the juror was "disabled" or unable to perform the duties of a juror. *Id.* When reviewing the decision to dismiss a "disabled" juror, an appellate court may not presume from a silent record that the dismissal was proper. *Id.* (citing *Valdez v. State*, 952 S.W.2d 622, 624 (Tex. App.—

Houston [14th Dist.] 1997, pet. ref'd). However, neither is it the role of an appellate court to substitute its own judgment for that of the trial court; rather, we must assess, after viewing the evidence in the light most favorable to the trial court's ruling, whether the trial court's ruling was arbitrary or unreasonable. *Id.* (citing *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009), and *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995)). We must uphold the ruling if it lies within the zone of reasonable disagreement. *See id.*

## Analysis

Here, the record before us is far from silent; in fact, we have a fairly well-developed record from which we can review the trial court's dismissal of Juror A. And from this record we see that, despite Juror A's initial expressions that he thought he would be able to continue, the trial court's observations regarding Juror A's reaction and current emotional state, as echoed by defense counsel himself, demonstrate that Juror A's physical countenance changed immediately upon his realization that appellant was responsible for Rincon Sr.'s death. It is true that the term "disabled" does not encompass bias or prejudice. *See Reyes*, 30 S.W.3d at 412. But the term does include "a physical illness, mental condition, or emotional state" which hinders a juror's ability to perform his duties as a juror. *See Hill*, 90 S.W.3d at 315. And, by all accounts, Juror A demonstrated a physical manifestation of his emotional reaction to having learned that appellant was the driver who struck and killed Rincon Sr.

Based on its extensive examination of Juror A and its ability to directly observe his demeanor and physical and emotional states, the trial court could have found that

discovering this information about appellant brought about a condition in Juror A that inhibited, hindered, or prevented him "from fully and fairly performing the functions of a juror." *See Reyes*, 30 S.W.3d at 411. Viewing the evidence in the light most favorable to the trial court's ruling, we cannot say that the trial court's dismissal of Juror A as "disabled" within the meaning of Article 36.29 was an arbitrary or unreasonable decision. *See Scales*, 380 S.W.3d at 784. Accordingly, we overrule appellant's sole point of error on appeal.

## Conclusion

Having overruled appellant's point of error on appeal, we affirm the trial court's judgment of conviction. *See* TEX. R. APP. P. 43.2(a).

Mackey K. Hancock
Justice

Do not publish.