

IN THE
TENTH COURT OF APPEALS

No. 10-14-00347-CR

CLINTON DOUGLAS MILLS,

Appellant

 v.

THE STATE OF TEXAS,

Appellee

From the 19th District Court
McLennan County, Texas
Trial Court No. 2012-1455-C1

MEMORANDUM  OPINION

In two issues, appellant, Clinton Douglas Mills, challenges the punishment assessed in this murder case. *See* TEX. PENAL CODE ANN. § 19.02 (West 2011).  Specifically, Mills contends that:  (1) during voir dire, the prosecutor improperly asked the jury to speculate as to why he elected for the jury, rather than the judge, to assess punishment; and (2) the trial court committed reversible error in determining that a juror was disabled under article 36.29 of the Code of Criminal Procedure.  *See* TEX. CODE CRIM. PROC. ANN.

art. 36.29 (West Supp. 2014). Because we overrule both of Mills's arguments, we affirm the judgment of the trial court.

## I. BACKGROUND

Here, Mills was charged for the murder of Matthew Ray Easley. *See* TEX. PENAL CODE ANN. § 19.02. The record reflects that Mills was one of three co-conspirators in the murder and that Mills was the first of the three to be tried. Prior to trial, Mills pleaded guilty to the charged offense and elected for a jury to assess his punishment. The trial court accepted Mills's guilty plea and found him guilty of the charged offense. The case proceeded to the punishment phase. At the conclusion of the punishment phase, the jury assessed punishment Mills to life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. The trial court certified Mills's right of appeal, and this appeal followed.

## II. VOIR DIRE

In his first issue, Mills argues that the prosecutor improperly asked the jury during voir dire to speculate as to why Mills elected to have a jury, rather than the judge, assess punishment.

**A.  Facts**

In his introductory remarks to the venire panel, the trial judge noted that:

This trial is going to be a little different because the Defendant in this case yesterday waived his right to a trial by jury at the guilt/innocence phase of the trial, pled guilty to the offense of murder and was found guilty of

murder by the Court, so what the jury is going to be asked to determine in this case, "What is the proper punishment for the offense of murder?"

Thereafter, during the State's portion of voir dire, the following exchange occurred:

[The State]:  Now the judge has told you that the—it's the Defendant's right to pick a judge or a jury to assess punishment, okay? He can say, "Judge, I want you to do it, or, no, I want twelve people of this county to do it." Let's see. Where did we stop when we were going through? I think we jumped over here, didn't we? Thirty-four, okay, Ms. White—or, no, Mr. White, 34, why would someone, you think pick a jury instead of a judge to assess their punishment?

VENIREPERSON:  Well, that becomes more of the—the peers. The Judge deals with it on a daily basis—

[The State]:  Uh-huh.

VENIREPERSON:  —and the—the community doesn't—

[The State]:  Uh-huh.

VENIREPERSON:  —so—so they'll look at it probably in a different—

[The State]:  A different set of glasses?

VENIREPERSON:  Yes.

[The State]:  Okay, what about Juror 35? Why do you think someone would choose a jury over a judge to assess punishment?

VENIREPERSON:  Hoping to appeal to emotion maybe.

[The State]:  Sure. Something maybe the Judge has seen too many of these. He—he's jaded. Thirty-six, why would

| | someone pick a jury over a judge to assess punishment? |
|---|---|
| VENIREPERSON: | You have more people involved in the process who can argue together and bring out points you may have missed.  Someone else will say, "Well, we missed this," and you talk about it, and sometimes it takes a group. |
| [The State]: | "Sometimes it takes a group," sure.  Thirty-seven, can you think of any other reasons? |
| VENIREPERSON: | No.  I agree with all of those— |
| [The State]: | Okay. |
| VENIREPERSON: | —that, you know, it's just better to have different opinions— |
| [The State]: | Uh-huh. |
| VENIREPERSON: | —rather than the one. |
| [The State]: | Sure.  I guess more people to convince? |
| VENIREPERSON: | Yes. |
| [The State]: | Thirty-eight. |
| VENIREPERSON: | The same, twelve different emotions, twelve different mindsets just going through it. |
| [The State]: | Does everybody kind of agree with that?  Does anybody have any other viewpoints on that? |
| THE VENIRE: | (No response). |

Mills did not object to the aforementioned exchange; however, it is this exchange that forms the basis of his complaint in this issue.

**B.** **Discussion**

Contentions that the State asked an improper question during voir dire require a timely and specific objection from the defendant at the earliest possible opportunity to preserve error. *See* TEX. R. APP. P. 33.1(a); *Penry v. State*, 903 S.W.2d 715, 741, 764 (Tex. Crim. App. 1995); *Ross v. State*, 154 S.W.3d 804, 807 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd); *see also Wampler v. State*, No. 11-13-00374-CR, ___ S.W.3d ___, 2015 Tex. App. LEXIS 10155, at **4-5 (Tex. App.—Eastland Sept. 30, 2015, no pet. h.). Because Mills failed to timely object to the complained-of exchange, he has waived this complaint on appeal. *See* TEX. R. APP. P. 33.1(a); *Penry*, 903 S.W.2d at 764; *Ross*, 154 S.W.3d at 807; *see also Wampler*, 2015 Tex. App. LEXIS 10155, at **4-5.

Nevertheless, despite the general rule regarding preservation, Mills urges this Court to apply the *Almanza* egregious-harm standard to this issue. *See generally Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985). This is essentially a fundamental-error argument, which can be waived by failure to object in the trial court. *See Mays v. State*, 318 S.W.3d 368, 393-94 (Tex. Crim. App. 2010) (concluding that appellant failed to preserve his complaints about "a series of egregiously improper remarks" by not objecting to those arguments at trial); *Morris v. State*, 460 S.W.3d 190, 197 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("Appellant, however, argues that the jury argument is incurable fundamental error. Even if the State's arguments were incurable and rose to the level that it deprived appellant of his right to due process of law, appellant waived

this complaint by failing to object in the trial court."); *see also Harvey v. State*, No. 10-15-00067-CR, 2015 Tex. App. LEXIS 9757, at **8-9 (Tex. App.—Waco Sept. 17, 2015, no pet. h.) (mem. op., not designated for publication) (same). Because Mills did not object to the complained-of exchange in the trial court, we are not persuaded by Mills's reliance on *Almanza* in this issue. We overrule Mills's first issue.

### III. JUROR DISABILITY

In his second issue, Mills asserts that the trial court erred in ruling that a juror was disabled and thereby discharged him from service on the jury.

### A. Applicable Law

If a juror becomes disabled after the trial of a felony begins, the remaining members of the jury may render a verdict. *See* TEX. CODE CRIM. PROC. ANN. art. 36.29(a); *see also Hill v. State*, 90 S.W.3d 308, 315 (Tex. Crim. App. 2002). In other words, article 36.29(a) mandates that the trial court proceed with the remaining eleven jurors. *See Hill*, 90 S.W.3d at 315. A juror is considered disabled when he has a physical illness, mental conditions, or emotional state that renders him unable to perform his duties. *See Hill*, 90 S.W.3d at 315; *see also Owens v. State*, 202 S.W.3d 276, 277 (Tex. App.—Amarillo 2006, pet. ref'd). A trial court's decision to declare a juror disabled and subsequently excuse the juror is reviewed for an abuse of discretion. *Owens*, 202 S.W.3d at 277 (citing *Brooks v. State*, 990 S.W.2d 278, 286 (Tex. Crim. App. 1999); *see Landrum v. State*, 788 S.W.2d 577, 579 (Tex. Crim. App. 1990).

**B.    Discussion**

At the close of evidence, the trial court went into recess to prepare the charge. During the recess, a juror approached the bailiff to report an issue he was having with the case. The juror explained that when a photo of Mills's family was shown to the jury, he realized that he knew Mills's child and the child's mother, but not Mills himself. The juror also noted that Mills's family has been to his house on numerous occasions and that he waves to Mills's child every morning. Furthermore, the juror asserted that:

> You know, like I said, I see [Mills's child] on a daily basis. I mean he's always riding his bike around the neighborhood. If I'm outside, he comes up and talks to me. You know, like I said, he's always standing outside waiting on the bus. We wave at each other every morning. Just I don't think I could—I don't think I could do that.

When asked what he could not do, the juror clarified that he could not reach a verdict in this case.

Later, the juror stated that, because of his relationship with Mills's family, he "can't sentence that kid's father. You know, I mean—I mean I deal with them" and that he did not feel like he could render a fair and impartial verdict in this matter. When questioning the juror about the situation, the trial judge noted that the juror seemed "emotionally distraught now as we're sitting here." The trial judge also recounted that the juror's "voice is quavering now, and you're pretty distraught about this." After the juror left the courtroom, the trial judge stated the following on the record:

> The juror was quite emotional about this situation, and he had no way of knowing until now that he knew anything about this case, or it just wasn't

an issue that had come up, but he was very emotional. He was about to cry in here, and he says there is no way that he could be fair and impartial in this matter. There's no way he could reach a verdict that would send the father of that child to the penitentiary for any period of time, life or any other sentence, and that he just could not do it, and he was—as I said, he was emotional.

Over Mills's objection, the trial court determined the juror to be disabled, excused the juror from service on the jury, and ordered that the trial proceed with eleven jurors.

With respect to a juror's disability, the Court of Criminal Appeals has mentioned:

In interpreting the language concerning "disability" as it relates to the various provisions of art. 36.29, we have recognized that a disability is not limited to physical disease, but also includes "any condition that inhibits a juror from fully and fairly performing the functions of a juror." *Griffin v. State*, 486 S.W.2d 948, 951 (Tex. Crim. App. 1975). *See also, Ramos v. State*, 934 S.W.2d 358, 369 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1198, 117 S. Ct. 1556, 137 L. Ed. 2d 704 (1997); *Bass v. State*, 622 S.W.2d 101, 106 (Tex. Crim. App. 1981), *cert. denied*, 456 U.S. 965, 102 S. Ct. 2046, 72 L. Ed. 2d 491 (1982). We have further held that this condition may result from physical illness, mental condition, or emotional state. *See, e.g., Brooks v. State*, 990 S.W.2d 278, 286 (Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 956, 120 S. Ct. 384, 145 L. Ed. 2d 300 (1999); *Landrum v. State*, 788 S.W.2d 577, 579 (Tex. Crim. App. 1990); *Carrillo v. State*, 597 S.W.2d 769, 771 (Tex. Crim. App. 1980). Thus, the dismissal of jurors as "disabled from sitting" have been upheld for varied reasons beyond physical illness. *See, e.g., Edwards v. State*, 981 S.W.2d 359, 366-7 (Tex. App.—Texarkana 1998, no pet.) (juror's inability to find child care for son led trial judge to believe that she could not be fair juror or impartially deliberate upon evidence); *Allen v. State*, 867 S.W.2d 427, 429-30 (Tex. App.—Beaumont 1993, no pet.) (juror distraught over two family deaths within twenty-four hour period); *Freeman v. State*, 838 S.W.2d 772 (Tex. App.—Corpus Christi 1992, pet. ref'd) (juror who provided sole financial support for his family so concerned about absence from job that he did not feel that he could be attentive during trial).

We have also held that a juror's bias or prejudice for or against a defendant does not render a juror "disabled." *Ex parte Hernandez*, 906 S.W.2d 931, 932 (Tex. Crim. App. 1995), *overruled on other grounds by Hatch*

*v. State*, 958 S.W.2d 813, 816 (Tex. Crim. App. 1997); *Carrillo*, 597 S.W.2d at 769-71. However, in each of these cases, the juror merely had some knowledge of the defendant; nothing in the record indicates that there was any evidence that such knowledge resulted in inhibiting the juror from "fully and fairly" performing his functions as a juror. *See Hernandez*, 906 S.W.2d at 931-2; *Carrillo*, 597 S.W.2d at 770. Thus, these cases do not foreclose the possibility that a juror is "disabled," as that term has been construed with regard to art. 36.29, through knowledge of a defendant when such knowledge "inhibits [him] from fully and fairly performing the functions of a juror." *Griffin*, 486 S.W.2d at 948. That is, while mere knowledge of a defendant cannot, in and of itself, render a juror "disabled," the effect of such knowledge on a juror's mental condition or emotional state may result in rendering the juror "disabled" as that term has been construed with regard to art. 36.29.

*Reyes v. State*, 30 S.W.3d 409, 411-12 (Tex. Crim. App. 2000).

As stated earlier, the trial judge noted on the record that the juror was emotionally distraught, had a "quavering voice" when describing his relationship with Mills's family, and was about to cry about the prospect of having to sentence Mills. Additionally, the juror informed the trial court that he was emotionally incapable of rendering a fair and impartial verdict in this case. Based on this information, we cannot say that the trial court abused its discretion in concluding that the juror was disabled on account of his emotional state. *See Reyes*, 30 S.W.3d at 411-12; *Brooks*, 990 S.W.2d at 286; *Landrum*, 788 S.W.2d at 579; *see also Owens*, 202 S.W.3d at 277. We overrule Mills's second issue.

### IV.  CONCLUSION

Having overruled both of Mills's issues on appeal, we affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed November 5, 2015
Do not publish
[CRPM]

